**In Matter of Rosalie H. WAX.**

**Charles A. Werner, Personal Representative, Petitioner/Appellant,**

v.

**Murray L. Wax, Respondent.**

**No. ED 78153.**

Missouri Court of Appeals,
Eastern District,
Division Two.

Aug. 28, 2001.

Motion for Rehearing and/or Transfer to Supreme Court Denied Oct. 31, 2001.

Application for Transfer Denied
Dec. 18, 2001.

Charles A. Werner, Sally E. Barker, St. Louis, for appellant.

James F. Bennett, St. Louis, for respondent.

CLIFFORD H. AHRENS, Presiding Judge.

Charles Werner ("personal representative") appeals the judgment of the probate division of the circuit court which found that Murray L. Wax ("ex-husband") is the surviving joint tenant and the sole owner of certain bank and brokerage accounts jointly held with his former wife, Rosalie H. Wax, now deceased ("decedent"). Personal representative contends that decedent was the sole owner of two accounts under the provisions of the decree of dissolution of marriage ("dissolution decree"). Personal representative claims that the funds in a third account came solely from assets of the decedent. We affirm in part and reverse in part.

Decedent and ex-husband were married in March, 1949, separated in August, 1982, and their marriage was dissolved on June 3, 1987. The dissolution decree incorporated the terms of a separation agreement made by decedent and ex-husband, which divided the marital property. According to the agreement, decedent and ex-husband became tenants in common of the real property located at 7106 Westmoreland ("house"). Decedent was permitted to live in the house for as long as she wished, but if decedent moved, ex-husband had the option to occupy the house, rent-free, or not to occupy the house, in which case the property was to be sold and the proceeds divided equally between decedent and ex-husband. Under the terms of the separation agreement ex-husband assigned "all of his right, title and interest" in cer-

tain property to decedent "as her sole property." The property assigned to decedent included the following joint accounts: Boston Five Cents Savings Bank Account # 11078404158 ("Boston Five Cents Savings account"), opened on May 31, 1978, and Oppenheimer Securities Account # 59664177–01–B001 ("Oppenheimer Securities account"), opened on May 7, 1982.

On December 5, 1987, decedent executed her Will, in which she left specific bequests of jewelry and household furniture to ex-husband.[1] In December 1991, decedent granted ex-husband a durable power of attorney, which she subsequently revoked on January 19, 1993. On January 18, 1993, decedent granted a durable power of attorney to Linda Small for health care matters solely. In June 1994, decedent suffered a hip injury and subsequently moved from the house to a nursing home. In the spring of 1995, decedent and ex-husband sold the house through a real estate agent retained by ex-husband. The property sold for $255,000.00, and after deducting loans and other charges totaling $76,523.33, decedent and ex-husband received net proceeds of $178,476.67, with each party receiving $89,238.33. Decedent's share of the net proceeds from the sale was initially placed in her bank account at Lindell Trust.

On March 15, 1995, ex-husband and decedent opened Account # 9894031778 with The Vanguard Group ("Vanguard account"), a joint account with right of survivorship. Thereafter the bulk of the decedent's share in the proceeds from the sale of the house was removed from the

decedent's account at Lindell Trust and placed in the Vanguard account.

Decedent died on November 4, 1998, and her will was filed with the probate division. At the date of decedent's death, she held several assets, which included: the Vanguard account; Citizens Bank Account # 110120–662–1 ("Citizens Bank account"); and OppenheimerFunds Account # 200 2001288100 ("OppenheimerFunds account"). Personal representative filed a petition to determine title to property with the trial court. After trial, the court found that the Citizens Bank account and OppenheimerFunds account held by decedent at the time of her death were different accounts from those listed in the 1987 dissolution decree, and that these accounts and the Vanguard account were held jointly with ex-husband at the time of decedent's death. The trial court concluded that upon the death of decedent that ex-husband became the sole owner of those accounts as the surviving joint tenant.[2] Personal representative filed this appeal.

We will uphold the judgment of the trial court unless it is not supported by substantial evidence, is against the weight of the evidence, or misstates or misapplies the law. *Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo. banc 1976). On appeal, we accept as true the evidence and reasonable inferences therefrom in the light most favorable to the prevailing party below and disregard contradictory evidence. *Schwartzkopf v. Schwartzkopf,* 9 S.W.3d 17, 20 (Mo.App.1999).

In his first point on appeal, personal representative contends that the trial court

---

1. The will of decedent is not in the record before this Court. The petition to determine title of property quotes from the will and states that the ex-husband was to receive the specific bequests of jewelry and furniture, with the remainder and residue going to other persons as beneficiaries.

2. There is no evidence in the record that ex-husband contributed funds to any of the accounts listed above after the dissolution of marriage.

erred in holding that ex-husband was the surviving joint tenant and sole owner of the Citizens Bank account and the OppenheimerFunds account because these accounts were established prior to the dissolution of the marriage of decedent and ex-husband, and under the dissolution decree ex-husband assigned all of his right, title and interest in these accounts to decedent as her sole property.

■ We first address the Citizens Bank account. The trial court found that the account number on the signature card for the Citizens Bank account held by decedent at the time of her death was not the same as the account number of the Boston Five Cents Savings account referred to in the dissolution decree, and that these were two different accounts. These findings are not supported by substantial evidence. The record includes the signature card for the joint account at Boston Five Cents Savings Bank signed by decedent and ex-husband on May 31, 1978. Citizens Bank verified this was a copy of the original card for the Citizens Bank account.[3] Citizens Bank confirmed that this account had been opened on May 31, 1978 in the names of decedent and ex-husband. On this signature card were the account numbers of both the Boston Five Cents Savings account referred to in the dissolution decree which was awarded to decedent and the Citizens Bank account held by decedent at the time of her death. There is no substantial evidence in the record that the Citizens Bank account held by decedent at the time of her death is a different account than the Boston Five Cents Savings account which she held at the time of the dissolution of marriage.

■ Ex-husband argues alternatively that despite his having assigned "all of his

right, title and interest" in the Boston Five Cents Savings account to decedent, decedent chose to maintain the account as a joint tenancy account for eleven years following the dissolution of marriage until her death, and had she "not wanted the disputed accounts to be joint, she would have terminated the joint tenancies." We disagree. One of the goals of the Dissolution of Marriage Act in 1973 was to eliminate any carryover of the animosity which brought about the severance of marriage by terminating, without recourse to further litigation, all unity of possession, as well as unity of title, between the spouses when consummating a 'just' division of 'marital property.' *Corder v. Corder* 546 S.W.2d 798, 804–05 (Mo.App.1977). "A division of 'marital property' which stops short of severing the relationship attached to the common ownership of property 'should be reserved for the unusual situation where the economics involved call for such a solution.' " *Id.*, (quoting *Davis v. Davis*, 544 S.W.2d 259, 264 (Mo.App. 1976)). The dissolution of marriage between decedent and ex-husband was not such an unusual situation.

■ Ex-husband would impose an unnecessary burden on decedent, as decedent did not need to do anything following the dissolution decree to terminate the statutory joint tenancy of the Boston Five Cents Savings Bank account. The dissolution decree incorporating the separation agreement in which ex-husband assigned "all of his right, title and interest" in the Boston Five Cents Savings account to decedent severed the joint tenancy of that account. We hold that a provision in a decree of dissolution of marriage which awards a statutory joint tenancy bank account to one spouse terminates the joint tenancy as between the spouses.[4]

---

**3.** The record reflects that Citizens Bank took over Boston Five Cents Savings Bank in 1994.

**4.** We note, however, that a bank or trust company is discharged by statute from liabili-

There is no evidence in the record of any affirmative action to create a new joint account. Ex-husband testified that he could not remember any signature cards signed after the dissolution of marriage concerning the Boston Five Cents Savings Bank account. The assets in the Citizens Bank account, the successor to the Boston Five Cents Savings account were the sole property of decedent at the time of her death and are part of decedent's estate.

■■ We next address the OppenheimerFunds account. Brokerage accounts are not governed by section 362.470 RSMO 1994, but rather by the language of the deposit documents. *Maudlin v. Lang*, 867 S.W.2d 514, 516 (Mo. banc 1993); *In re Estate of Hayes v. Weis*, 941 S.W.2d 630, 633 (Mo.App.1997). Unlike the signature card for the Citizens Bank account, the Oppenheimer deposit document had no identifiable account number and was not dated.[5] The language of this Oppenheimer deposit document indicates that it created a joint tenancy account with the right of survivorship. Although it is unclear from the deposit document to which account it refers, the trial court did not find any indication that the account was intended to be other than a joint tenancy with the right of survivorship. There was no evidence in the record of fraud, undue influence, mental incapacity, or mistake in reference to the account that would void the presumption created by the specific language of the only available deposit document that this was a joint tenancy account with the right of survivorship.

But in this case, however, the record does not support the claim of decedent's estate that the assignment of property provisions of the 1987 dissolution decree should extend to the OppenheimerFunds account. Personal representative had the burden of proof to make a *prima facie* showing that the decedent solely owned the accounts at the time of her death. *In re Estate of Foster*, 878 S.W.2d 896, 898 (Mo.App.1994). Personal representative did not meet this burden of proof. As noted above, the only Oppenheimer deposit document in the record does not have an identifiable account number linking it to either the Oppenheimer Securities account or to the OppenheimerFunds account. The OppenheimerFunds account held by decedent and ex-husband at the time of her death [6] had a different account number from the account referenced in the dissolution decree of decedent and ex-husband. There is evidence that the balance of the Oppenheimer Securities account at the end of December, 1986, in the amount of $13,413.90, matched the starting balance of the OppenheimerFunds account in January, 1987. But following the dissolution of marriage, the assets in the OppenheimerFunds account increased by nearly 58 percent to a balance of $22,418.00 by purchase of shares in July, August and December of 1987. Moreover, the account balance increased by nearly 89 percent between December 31, 1987 and December 31, 1989, when the balance was $42,308.92. This was a substantial change in investment pattern from the Oppenheimer Securities account during the period from 1982 to the

---

ty for any payments made on the account in accordance with the joint deposit statute prior to receipt by the bank or trust company of written notice by any one of the joint tenants not to pay the deposit in accordance with the terms thereof. Section 362.470 RSMo 1994. A similar statute governs deposits in savings and loan associations. Section 369.174 RSMo 1994.

5. It did have a date stamp box with a handwritten notation "5/6" and a box for ordering checks with a handwritten notation "recd 5–7–82."

6. The account statements on this account reference a joint tenancy with right of survivorship and not as tenants in common.

date of dissolution of marriage. There is no evidence in the record of the source of the funds deposited from the date of dissolution of marriage in 1987 through 1989.[7] From this evidence the trial court could have reasonably inferred there had been some difference or change between the two accounts.

Moreover, the record does not further show or explain the circumstances underlying the purported changes in account numbers of the brokerage accounts at issue. Nothing in the record shows precisely when the OppenheimerFunds account was created. The account statement for the OppenheimerFunds account for the year 1987 does not indicate when the account was established. Nor does it indicate that the account number had changed in 1987 from that of the Oppenheimer Securities account to that of the OppenheimerFunds account. Personal representative did not make a *prima facie* showing that the decedent solely owned the accounts at the time of her death. The trial court did not err in finding that the OppenheimerFunds account held by decedent at the time of her death had a different account number from the account referenced in the dissolution decree of decedent and ex-husband, or that the OppenheimerFunds account held by decedent at the time of her death was jointly held by decedent and ex-husband. There was substantial evidence to support the trial court's finding that ex-husband was the surviving joint tenant and sole owner of the assets in the OppenheimerFunds account.

■ In his second point on appeal, personal representative asserts that the trial court erred in holding that ex-husband was the surviving joint tenant and sole owner of the Vanguard account because all of the assets in this account came solely from assets of the decedent, primarily from her share of the net proceeds from the sale of the house. We disagree.

The Vanguard account was opened after the parties' dissolution of marriage. It is a brokerage account and it is necessary to look to the language of the deposit documents to determine the nature of the account. *Maudlin,* 867 S.W.2d at 516–17; *Estate of Hayes v. Weis,* 941 S.W.2d at 633. The language of the account registration form for the Vanguard account states that the account will be registered as joint tenants with the right of survivorship unless otherwise indicated. The trial court did not find indications that the account was intended to be other than a joint tenancy with the right of survivorship, and did not err in concluding that it was a joint account.

■ As the sole depositor of funds to the Vanguard account, decedent had the power, during her lifetime, to divest the interests of any non-contributing joint tenants by transferring the funds to a new account or simply closing the joint account.[8] *Estate of Munier by Garger v. Jacquemin,* 899 S.W.2d 114, 117 (Mo.App. 1995); *Carroll v. Hahn,* 498 S.W.2d 602, 607 (Mo.App.1973). Unlike the factual situation in *Estate of Munier,* decedent did not take any steps to change the title to the account. As the surviving joint tenant, ex-husband became the sole owner of this account, even if the decedent had contributed all of the assets deposited in the Vanguard account, absent fraud or undue influence. *In re Estate of Hayes,* 658 S.W.2d 956, 958–59 (Mo.App.1983). "In order to establish presumption of undue influence on the part of surviving tenant, there must be a showing of fiduciary rela-

---

7. There is evidence in the record that in 1995 or thereafter ex-husband may have deposited some of the proceeds from the sale of the house in the OppenheimerFunds account.

8. The record does not reflect that anyone other than the decedent contributed to the account at issue.

tionship and some additional evidence from which undue influence may be inferred." *Id.; see also Estate of Davis,* 954 S.W.2d 374, 379–80 (Mo.App.1997). Fraud, which is different from undue influence, is never presumed, and it requires evidence beyond mere suspicion to support an inference of fraud. *Estate of Hayes,* 658 S.W.2d at 959.

There is no evidence in the record to show that ex-husband committed fraud or exerted undue influence against decedent, or stood in a fiduciary relationship with decedent. In January 1993, decedent had revoked the durable power of attorney that she had previously given to ex-husband in December 1991. Nothing shows that ex-husband used the revoked power of attorney from decedent to transfer assets to the joint Vanguard account, and the record does not reflect that decedent was incompetent when she opened the joint account with ex-husband with The Vanguard Group. As the trial court found, nothing in the record indicates that decedent did not voluntarily withdraw assets from other accounts and place them in the Vanguard account. There was substantial evidence to support the trial court ruling that ex-husband was the surviving joint tenant of the Vanguard account, and sole owner of the assets in said account. Point denied.

The judgment of the trial court is affirmed in part, and reversed in part as to the Citizens Bank account, and remanded with directions to the trial court to enter judgment in conformity with this opinion.

WILLIAM H. CRANDALL, JR., J. concurs.

KATHIANNE KNAUP CRANE, J., concurs.