

# In the
# Missouri Court of Appeals
# Western District

| | |
|---|---|
| **JENNIFER L. JOYNER,**<br><br>     **Appellant,**<br><br>**v.**<br><br>**CHRISTOPHER E. JOYNER,**<br><br>     **Respondent.** | **WD77575**<br><br>**OPINION FILED:**<br><br>**March 3, 2015** |

**Appeal from the Circuit Court of Cole County, Missouri**
**The Honorable Patricia S. Joyce, Judge**

*Before Division Three: Victor C. Howard, P.J., James Edward Welsh, and Gary D. Witt, JJ.*

Jennifer Joyner (Wife) appeals the circuit court's judgment dissolving her marriage to Christopher Joyner (Husband). Wife contends that the circuit court erred in its division of the marital property and in its award of maintenance. We affirm the circuit court's judgment in part and reverse in part.

## Background

Husband and Wife were married on May 16, 2006. No children were born during the marriage. In July 2013, after seven years of marriage, Wife filed a petition for dissolution. The circuit court held a hearing on the matter in January 2014, at which the parties presented the following evidence.

Husband is employed by the Jefferson City Police Department as a police officer. He began that employment in November 2005, about six months prior to the couple's marriage. During the marriage, Wife first worked at a retail furniture business and later was employed as an independent insurance agent. In August 2010, Wife was diagnosed with anxiety disorder, chronic fatigue syndrome, and fibromyalgia. Shortly thereafter, Wife quit selling insurance and began working part time at her brother's business. At the time of trial, Wife was no longer working for her brother and had not worked full time for two to three years. Wife claimed that she was unable to work due to her health problems. She stated that her application for disability benefits was pending with the Social Security Administration. Wife introduced the deposition testimony of George W. Carr, M.D., who testified that Wife's various health issues would limit her ability to hold full-time employment and that, absent substantial improvement, "she should be considered completely and totally disabled."

During the marriage, the couple acquired certain property including Husband's pension benefit from the Missouri Local Government Employees Retirement Benefits ("LAGERS"), the marital residence, approximately $4,000 in bank accounts, three motor vehicles (valued at $17,000), and household items worth less than $6,000. The evidence at trial showed that ninety-four percent of Husband's LAGERS pension benefit was earned during the marriage. At the time of trial, the marital home had a mortgage of $100,000. The couple had refinanced the house in the summer of 2013, at which time the bank valued the home at $110,000. Husband testified, based on the opinions of two real estate agents, that the value of the property was $92,500.

The circuit court entered its judgment and decree of dissolution on March 6, 2014. The court adopted Husband's proposed distribution of the marital assets and liabilities as fair and equitable. That proposed distribution included a $5,400 "asset equalization" payment from Wife

to Husband. The court also accepted Husband's valuation of the marital home as $92,500 and awarded the marital home (and its $100,000 mortgage debt) to Husband. The court found that Husband's proposal for Wife to be awarded all but $200 worth of the personal household items and for Husband to assume the debt on the marital residence resulted in a "disparate treatment of the assets." For that reason, the court awarded Wife a twenty-five percent share of the marital portion of Husband's LAGERS benefits. The court accepted Husband's valuation of the LAGERS pension as $573 a month and calculated Wife's percentage as $135 a month.[1] The court also ordered Husband (1) to pay Wife $450 a month in non-modifiable maintenance for a period of thirty-six months, and (2) to contribute $220 per month toward Wife's health insurance premiums until she becomes eligible for other insurance, not to exceed thirty-six months.

## Standard of Review

This Court must sustain the judgment in a court-tried case unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). "The burden of demonstrating error is on the party challenging the divorce decree." *Hernandez v. Hernandez*, 249 S.W.3d 885, 888 (Mo. App. 2008). We view the evidence and all permissible inferences in the light most favorable to the judgment and disregard all contrary evidence and inferences. *Bridgeman v. Bridgeman*, 63 S.W.3d 686, 689 (Mo. App. 2002).

## Discussion

Wife raises six points on appeal. Many of her claims pertain to the division of marital property. "The circuit court has broad discretion in dividing property in a dissolution action, and we will interfere . . . only if the division is so unduly weighted in favor of one party that it

---

[1]Neither party offered evidence of the present cash value of the LAGERS pension.

amounts to an abuse of discretion." *Bright v. Bright*, 429 S.W.3d 517, 520 (Mo. App. 2014). We will find an abuse of discretion only if the ruling is "clearly against the logic of the circumstances and is so arbitrary and unreasonable as to shock one's sense of justice and indicate a lack of careful consideration." *Id.* The appellant bears the burden of overcoming the presumption that the circuit court's division of the property is correct. *Id.*

Section 452.330, RSMo,[2] governs the division of marital property. It provides that the circuit court "shall set apart to each spouse such spouse's nonmarital property and shall divide the marital property and marital debt in such proportions as the court deems just after considering all relevant factors."[3] § 452.330.1. Thus, pursuant to section 452.330.1, the division of both the marital property and marital debts is mandatory on the part of the trial court. *Jonusas v. Jonusas*, 168 S.W.3d 117, 119-20, n.1 (Mo. App. 2005); *Belcher v. Belcher*, 106 S.W.3d 601, 604 (Mo. App. 2003). The circuit court has "great flexibility and far-reaching power in dividing the marital property." *Bright*, 429 S.W.3d at 520. While the statute requires a fair and equitable division, it does not mandate an equal division. *See id.*

### Division of LAGERS Pension

In Point I, Wife contends that the circuit court erred as a matter of law in awarding her a portion of Husband's monthly LAGERS retirement benefit because, pursuant to section 70.695, such benefits are specifically "unassignable." As a result, Wife argues, the circuit court erred in

---

[2]Statutory references are to the Revised Statutes of Missouri (RSMo) 2000, as updated by the 2013 Cumulative Supplement.

[3]The factors listed are: "(1) The economic circumstances of each spouse at the time [of the property division]; (2) The contribution of each spouse to the acquisition of the marital property . . . ; (3) The value of the nonmarital property set apart to each spouse; (4) The conduct of the parties during the marriage; and (5) Custodial arrangements for minor children." § 452.330.1. The listed factors are not exhaustive, however. *Bright*, 429 S.W.3d at 520.

4

its overall division of property and the maintenance award "because they relied in part on the assumption that [Wife] was to receive $135 per month of [Husband's] LAGERS benefits."

There is no dispute that retirement benefits are marital property subject to division. *Lagermann v. Lagermann*, 109 S.W.3d 239, 243 (Mo. App. 2003). Typically, when a dissolution decree delineates a former spouse's right to receive a portion of a retirement plan as marital property, the court will enter a Qualified Domestic Relations Order ("QDRO"). *See Seal v. Raw,* 954 S.W.2d 681, 685 (Mo. App. 1997) (citing 29 U.S.C. § 1056(d)(3)). "To alienate or assign Employee Retirement Income Security Act (ERISA) retirement benefits when dividing marital property, a court must enter a QDRO[.]" *In re Marriage of Green*, 341 S.W.3d 169, 174 (Mo. App. 2011) (citing 29 U.S.C. §§ 1056(d)(1), (3)(A) (2000)). "A QDRO 'creates or recognizes the existence of an alternate payee's right to . . . receive all or a portion of the benefits payable with respect to a participant under a [pension] plan [.]'" *Seal*, 954 S.W.2d at 683 (quoting 29 U.S.C. § 1056(d)(3)(B)). A QDRO allows a court "to enforce a nonplan participant's right to . . . marital property rights previously granted by any judgment, decree, or order." *Shelton v. Shelton*, 201 S.W.3d 576, 580 (Mo. App. 2006) (citations omitted).

Here, the circuit court made no provision for a QDRO. Presumably, this is because a decree relating to the division of a LAGERS retirement plan will not satisfy ERISA requirements to be designated a "qualified" domestic relations order.[4] At trial, the court informed the parties that LAGERS will not honor a QDRO. Husband's attorney was fully aware of that fact; Wife's

---

[4]To satisfy federal requirements for a QDRO, the court's domestic relations order must be "qualified." *Green*, 341 S.W.3d at 175. "Qualification" is "a specific procedure for federal recognition of state property in ERISA plans." *Id.* The plan administrator determines whether the order satisfies ERISA's requirements for it to be "qualified." *Id.* (citing 29 U.S.C. § 1056(d)(3)(G)(i)).

attorney was not.[5]  On direct examination, Husband's attorney asked Husband:

> Q. So -- And you recognize -- I mean, we've discussed the fact that LAGERS does not honor a QDRO.
>
> A. Yes.
>
> Q. So if the Court does award her 25 percent of your retirement, you would pay her $137.50 [sic] at that time; is that correct?
>
> A. Correct.

As noted, the circuit court agreed with Husband's position on this issue and ordered that:  "[Wife] is awarded $135 of the monthly retirement benefit that [Husband] has accrued through LAGERS, during the marriage, to be received by [Wife] when and if [Husband] draws retirement from the LAGERS account[.]"

On appeal, Wife relies on *Smith v. Missouri Local Government Employees Retirement System*, 235 S.W.3d 578 (Mo. App. 2007), to argue that the circuit court's order that a portion of Husband's LAGERS benefits be paid to her "when and if [Husband] draws from this retirement" is "irregular and void" because it violates section 70.695.  Section 70.695 provides:

> The right of a person to an allowance, to the return of accumulated contributions, the allowance itself, any allowance option, and any other right accrued or accruing under the provisions of [the statutes pertaining to LAGERS], and all moneys belonging to the system shall not be subject to execution, garnishment, attachment, the operation of bankruptcy or insolvency laws, or to any other process of law whatsoever, and shall be unassignable, [with certain exceptions].

Among the exceptions is a provision pertaining to "the support and maintenance of children." §70.695(2).  There is no corresponding exception for a spouse.  *See id*.

---

[5]The parties point to no statute or regulation explicitly stating that LAGERS will not honor a QDRO (and we find none), but we do find support for the proposition in *Keith S. Bozarth*, *QDROs and Public Pensions in Missouri*, 51 J. Mo. B. 149, 149 (1995) ("Governmental [pension] plans are generally exempted from the provisions of ERISA, and therefore are not required by ERISA to recognize QDROs." (citing I.R.C. § 1003(b)(1)); and in James P. Rosenbloom, *Pensions and Deferred Compensation*, II MISSOURI FAMILY LAW, §16.7 and §16.32 (MoBar 7th ed. 2012) (stating that "plans of state and local governments are not considered qualified plans" and that "most plans of state and local governments are not directly divisible by court order").

In *Smith*, the parties had agreed that the wife would relinquish any marital interest in the husband's LAGERS pension and husband would pay wife a monthly payment of non-modifiable maintenance. 235 S.W.3d at 580. When husband stopped paying maintenance, the circuit court granted wife's application for income withholding from the LAGERS pension. *Id.* LAGERS refused to comply with the withholding notice, and wife filed a motion to compel compliance. *Id.* The circuit court ultimately granted LAGERS' motion to dismiss. *Id.* On appeal, LAGERS argued that section 70.695 "expressly provides that benefits paid to [LAGERS] members cannot be levied upon to satisfy other judgments, except in the case of child support obligations." *Id.* at 581. This Court found that the conflict between section 452.140, under which no assets are exempt from execution for spousal maintenance, and section 70.695, which shields LAGERS from any execution *other than for child support*, could not be harmonized. *Id.* at 582. Thus, because the more specific provision must take precedence, we concluded that section 70.695 "prevails and precludes any execution or income withholding for spousal maintenance." *Id.*

While retirement benefits under the LAGERS pension plan are not assignable, they are, nevertheless, "marital property." *See Lagermann*, 109 S.W.3d at 243; § 452.330.2 (defining "marital property" as "all property acquired by either spouse subsequent to the marriage"); *see also Hilligardt-Bacich v. Bacich*, 174 S.W.3d 11, 14-15 (Mo. App. 2005) (where husband was awarded the entire LAGERS pension, the court remanded for the lower court to make specific findings as to marital and non-marital portions of the pension in order to determine whether the overall property division was just); *Jarvis v. Jarvis*, 131 S.W.3d 894, 899 (Mo. App. 2004) (where husband was awarded the entire LAGERS pension, wife contested the court's valuation of the marital portion, arguing that it rendered the overall property division inequitable). Because LAGERS benefits are marital property, the circuit court must factor them into its

7

division of property in a dissolution action. Wife argues, however, that the division of LAGERS benefits in this case conflicted with Missouri law, in that, under section 70.695, Wife cannot legally compel payment of her portion of that marital property, thereby making the overall division of property and maintenance inequitable and unconscionable.

We agree. One of the goals of the 1973 Dissolution of Marriage Act was to "eliminate any carryover of the animosity which brought about the severance of marriage by terminating, without recourse to further litigation, all unity of possession, as well as unity of title, between the spouses when consummating a 'just' division of 'marital property.'" *In re Wax*, 63 S.W.3d 668, 671 (Mo. App. 2001). As explained in *In re Marriage of Accurso*, section 452.330 "seeks to effectively minimize the necessity for recourse to further litigation to completely sever all relations between the parties." 234 S.W.3d 556, 557 (Mo. App. 2007).[6] In order to effect that goal, our courts have held that "a division of 'marital property' which stops short of severing the relationship attached to the common ownership of property 'should be reserved for the unusual situation where the economics involved call for such a solution.'" *Wax*, 63 S.W.3d at 671 (quoting *Corder v. Corder*, 546 S.W.2d 798, 804-05 (Mo. App. 1977)); *see also Whaley v. Whaley*, 805 S.W.2d 681, 682 (Mo. App. 1990).

The most common scenario in which "common ownership" problems arise is in the division of the marital home. *See, e.g., Whaley*, 805 S.W.2d at 681-82; *Henderson v. Henderson*, 746 S.W.2d 99, 100 (Mo. App. 1988); *In re Marriage of Pine,* 625 S.W.2d 942, 946 (Mo. App. 1981). This Court explained, in *Pine*: "Our cases have consistently held that[,] unless there is

---

[6]In *Accurso*, where the circuit court awarded husband his law practice and wife the building in which he operated his practice, the appellate court found no evidence that necessitated avoidance of the goal to eliminate continuing animosity between the parties by terminating all unity of possession and remanded for the lower court to determine whether the property could be divided to avoid the landlord-tenant relationship. 234 S.W.3d at 557-58.

evidence which necessitates a continuation of a tenancy in common[,] real estate involved in a divorce proceeding should be divided at the time of the dissolution." 625 S.W.2d at 946. Absent unique factors, such as an unusual financial situation or the need for one spouse to occupy the residence until minor children's emancipation, it is error for the circuit court to leave parties as tenants in common in the marital home. *See Whaley*, 805 S.W.2d at 682.[7]

Our courts have frequently reversed dissolution cases where the trial court's division of the marital residence left the parties as tenants in common with no evidence of any unique factors. *See, e.g., id.*; *Henderson*, 746 S.W.2d at 100-01; *Pine,* 625 S.W.2d at 946. This is because such an outcome contravenes the goal to minimize continuing animosity "by terminating . . . all unity of possession, as well as unity of title, between the spouses." *See Wax*, 63 S.W.3d at 671. Similarly, here, the circuit court's contingent deferred order that Husband pay Wife a portion of his retirement pension, when and if he receives it at some point in the future, clearly violates that goal and the legislative intent behind the Dissolution of Marriage Act.

Even where unique economic factors exist, however, the judgment still must be sufficiently definite and final so as to minimize the need for future court intervention. In *Kelly v. Kelly*, 340 S.W.3d 673, 677 (Mo. App. 2011), for example, the circuit court ordered the sale of the marital home but, due to the poor economic conditions in the real estate market, included a provision that specified an initial listing price and a schedule for reducing that listing price if efforts to sell the home are unsuccessful. The husband was allowed to remain in the home and pay the mortgage until sold, but, in the event of his default on the mortgage, he had to pay wife

---

[7]For an example of a case where such unique factors were found, see *Colabianchi v. Colabianchi*, 646 S.W.2d 61 (Mo. banc 1983) (upholding a division of property that gave wife right to live in the family home for six years, until she remarried, or until all of the minor children left home; upon the sale of the house, the parties were to share in distribution of proceeds equally; until then, husband was to pay one-third of the mortgage, taxes and insurance, and three-fourths of cost of maintenance).

9

$15,000. *Id*. at 677. This Court found the schedule to gradually lower the listing price to be "a practical approach . . . in the current economic climate," but noted that the judgment fails to specify any date certain by which the home must be sold. *Id*. We explained that, "in order to be sufficiently definite and minimize the need for future court intervention," and given the lack of incentive for the wife to facilitate a sale, the judgment must be reversed and remanded for the court to designate a time period for the final sale of the home. *Id*. at 677-78; *see also Thomas v. Thomas*, 76 S.W.3d 295, 303-04 (Mo. App. 2002) (where decree "set no time limit for the sale of the house" and gave wife "no incentive to cooperate in any sale," remanded for decree to be modified to specify a time period for the home to be sold); *Bussen v. Bussen*, 273 S.W.3d 90, 91-92 (Mo. App. 2008) (where decree provided only that the marital home "shall be sold" and the proceeds equally divided, held that the decree must be reversed and remanded for circuit court to "designate a time period for sale").

Under section 452.330.1, in a proceeding for dissolution of marriage, the division of both the marital property and marital debts is mandatory on the part of the trial court. *Jonusas,* 168 S.W.3d at 119-20, n.1; *Belcher*, 106 S.W.3d at 604. After making findings as to whether each asset is marital or non-marital property, the court then must set apart to each spouse his or her non-marital property and "divide the marital property and debt as it deems just." *Jonusas,* 168 S.W.3d at 119; § 452.330.1. In addition, "[t]he trial court must make a distribution of marital property that is definite and capable of enforcement." *Gillette v. Gillette*, 416 S.W.3d 354, 356 (Mo. App. 2013) (quoting *Jonusas*, 168 S.W.3d at 119). Absent such a definite and enforceable order, "this Court cannot adequately determine whether the division of property is just." *Id*.; *see also Hird v. Hird,* 872 S.W.2d 605, 606 (Mo. App. 1994) (where circuit court could not determine which party possessed a sum of cash and ordered that "whoever has the money must

10

pay one-half of it to the other party," held that because the distribution of marital property was not "definite and capable of enforcement," the property "remains undivided and undisposed" and remanded for the lower court to determine who has the cash and then to divide it justly).

In this case, the court's order that Wife shall receive her portion of Husband's monthly LAGERS retirement benefit "when and if [Husband] draws retirement from the LAGERS account" does not satisfy the court's obligation to equitably divide all of the couple's marital property and debts in a manner that is definite and capable of enforcement.[8] As stated, a QDRO allows a court to alienate or assign a portion of a pension to an alternate payee and to enforce its order granting a former spouse the right to receive a portion of a retirement plan as marital property. *See Green*, 341 S.W.3d at 174; *Shelton*, 201 S.W.3d at 580. Here, however, the provisions in the judgment did not effectuate a division of Husband's LAGERS pension and cannot be enforced via a QDRO. Accordingly, the portion of the judgment related to marital property is neither definite (in that it cannot be viewed as having divided all of the marital property) nor capable of enforcement, and it is insufficient to allow this Court to review the fairness of the distribution because of the speculative nature of Wife's future receipt of pension proceeds from Husband.

Moreover, because the court's order is not subject to a QDRO, the division of property would necessarily rely on Husband to pay Wife when and if he begins to receive his pension. Even if this "deferred distribution" is considered on the order of a division of marital property in the form of an award of future, contingent maintenance (as was the case in *Smith*, *supra*), such a disposition is wrong on two counts. First, it is improper to use maintenance as a means of

---

[8]We note that, under the LAGERS statutes and regulations, Husband could elect to receive a lump-sum cash payout in lieu of a monthly benefit. § 70.660; 16 C.S.R. 20-2.056. It is unclear whether the circuit court considered how such an election by Husband would impact its allocation of the LAGERS pension in this case.

11

compensating a spouse for an interest in marital property. *See Fisher v. Fisher*, 278 S.W.3d 732, 734 (Mo. App. 2009); *Booher v. Booher*, 125 S.W.3d 354, 357 (Mo. App. 2004). Second, a maintenance award cannot be based on speculation as to future conditions of the parties. *See, e.g., Sullins v. Sullins*, 417 S.W.3d 878, 886 (Mo. App. 2014); *Angel v. Angel*, 356 S.W.3d 357, 364 (Mo. App. 2011).

In sum, we conclude that the circuit court erred in its deferred allocation of a portion of the LAGERS pension benefit to Wife, because it fails to satisfy the circuit court's obligation under section 452.330 to equitably divide all of the couple's marital property and debts in a manner that is definite and capable of enforcement. Moreover, the circuit court may not order a deferred distribution of marital property "if and when" it is received to be paid in the form of future, contingent maintenance. Although we find that the trial court erred when it failed to divide the marital portion of Husband's pension, we are cognizant that the court was using the only information presented to the court by the parties. By presenting evidence only of the monthly value of the LAGERS pension plan, and not of the total present value of that asset, the parties failed to supply the circuit court with sufficient evidence for it to properly factor that asset into the overall division of property. On remand, the circuit court may wish to receive evidence of the present total value of that asset in order to implement a "just division" of the marital assets. As explained in *Bozarth,* even where a plan provides for a "division of benefits order" (the governmental equivalent of a QDRO, *see, e.g.,* § 104.312 applicable to Missouri state employees), "[n]othing prevents the parties to a dissolution from performing a present value calculation and allocating other property to compensate for that value" to "avoid the shared risk which results from a division of benefits order." 51 J. Mo. B. at 150-51. If the parties are unwilling to present evidence of the present cash value of the pension, the court may appoint its

12

own "expert" witness or master to value the asset and offer testimony or report to that effect. The costs inherent in such an undertaking could then be apportioned to the parties as the court sees fit. *See* Rule 68.01; *Marriage of Gardner*, 973 S.W.2d 116, 120 (Mo. App. 1998).

Accordingly, we reverse the circuit court's award of a portion of the LAGERS pension to Wife, and we remand with instructions to reallocate the overall division of property after setting aside the pension to Husband.

### *Remaining Points on Appeal*

In Point IV, Wife contends that the circuit court erred, as a matter of law, in refusing to hear any testimony as to Husband's conduct during the marriage. Among the factors that the circuit court may take into consideration both when dividing marital property and in awarding maintenance is "[t]he conduct of the parties during the marriage." §§ 452.330.1(4) and 452.335.2(9); *Lagermann,* 109 S.W.3d at 242-43. At trial, when Wife attempted to introduce evidence of Husband's misconduct, Husband's counsel objected on the basis that the issue had not been pleaded. The circuit court sustained the objection. The court also sustained Husband's objection to Wife's request to amend the pleadings.

"The trial court enjoys considerable discretion in ruling on the admission or exclusion of evidence; thus, we will not reverse the trial court's ruling excluding evidence unless the ruling constituted an abuse of that discretion." *Educap, Inc. v. Smith*, 362 S.W.3d 451, 455 (Mo. App. 2012). The circuit court also is afforded great discretion in determining whether to permit amendment of the pleadings under Rule 55.33(b). *Midland Prop. Partners, LLC v. Watkins*, 416 S.W.3d 805, 816 (Mo. App. 2013). We will not disturb the court's decision on appeal absent an "obvious and palpable" abuse of discretion. *Id*. We presume that the circuit court's discretionary rulings are correct. *Anglim v. Mo. Pacific R.R. Co*., 832 S.W.2d 298, 303 (Mo. banc 1992).

13

Here, the circuit court refused to allow evidence regarding Husband's misconduct during the marriage because the issue was not included in the pleadings, and, thus, Husband was not put on notice that this was something he would have to defend against at trial. Wife fails to demonstrate that the circuit court abused its discretion in so ruling. Point IV is denied.

In Point II, Wife argues that the circuit court erred in assigning a value of $92,500 to the marital home because that valuation was not supported by substantial evidence and is against the weight of the evidence. The circuit court has broad discretion to value property in a dissolution action. *Torrey v. Torrey*, 333 S.W.3d 34, 36 (Mo. App. 2010). The circuit court's decision on that issue will not be disturbed absent an abuse of discretion. *Id.* "It is well settled that the owner of property is competent to testify in a dissolution proceeding as to its value." *Jarvis*, 131 S.W.3d at 900. Here, Husband testified that he valued the property at $92,500 after contacting two realtors who told him, based on their review of the house and comparables, that the property could be sold for between $90,000 and $95,000. Wife initially valued the house at $100,000 but testified at trial that it had been valued at $110,000 when they refinanced some months earlier. Neither party indicated that the property had been appraised or presented an appraisal to the court. The circuit court is "free to accept or reject all, part, or none of the testimony of a witness," and, thus, the court was free to accept Husband's testimony concerning the present value of the property. *See Krost v. Krost*, 133 S.W.3d 117, 119 (Mo. App. 2004).

Wife fails to persuade us that the circuit court abused its discretion in accepting Husband's valuation; nor does she show that the valuation was not supported by substantial evidence. Nevertheless, we are remanding for the circuit court to reconsider the entire property division and maintenance scheme. We advise the circuit court to note that, despite the general rule that the proper date for valuation of marital property is the date of trial, "where the division

14

of property is not reasonably proximate to the time of trial, the valuation date should be the date of the division of the property." *Wright v. Wright*, 1 S.W.3d 52, 57 (Mo. App. 1999). Thus, on remand, the court may wish to receive evidence as to the current value of all the marital property.

As to Wife's remaining points, because we are remanding for the court to reconsider its rulings as to the overall division of property and the maintenance provisions, we need not address Point III, which contests the ordered asset equalization payment, or the arguments in Points V and VI as to the duration and amount of maintenance. These issues will necessarily be a part of the court's recalculation as to the proper equitable distribution of property.

## Conclusion

Given the legislature's direction that the dissolution court divide the marital property equitably and completely at the time of the judgment, and absent any extenuating circumstances foreclosing that directive, the trial court erred in failing to fairly and finally divide the property as of the entry of the judgment herein. The failure of the parties herein to provide the present cash value of the LAGERS pension cannot be allowed to frustrate the goal of the legislation or the duty of the court to make a full and final distribution of their marital property in the court's judgment. If necessary, the court can direct the parties to acquire the necessary information or do the necessary at the parties' expense to acquire the information required for a full and final distribution. The judgment is reversed and remanded for further proceedings in accordance with this opinion.

/s/ JAMES EDWARD WELSH
James Edward Welsh, Judge

All concur.

15