

# In the Missouri Court of Appeals
# Eastern District

## SOUTHERN DIVISION

| | | |
|---|---|---|
| KATHRYN J. LANDEWEE, | ) | ED102483 |
| | ) | |
| Appellant, | ) | |
| | ) | Appeal from the Circuit Court |
| vs. | ) | of Cape Girardeau County |
| | ) | 13CG-DR00319 |
| | ) | |
| JOHN E LANDEWEE, | ) | Honorable Scott E. Thomsen |
| | ) | |
| Respondent. | ) | Filed: July 19, 2016 |

## Introduction

Kathryn J. Landewee (Wife) appeals from the judgment of the trial court in the dissolution of her marriage to John E. Landewee (Husband). She challenges the trial court's distribution of marital property. We affirm.

## Background

Husband and Wife married in 1991 and had two children of the marriage. During the marriage, the parties acquired property and debts, including Knaup Floral, Inc., Wife's family's business. Knaup Floral is located at 838 William Street, Cape Girardeau, Missouri, which is connected via a breezeway to the marital home, located at 136 South Pacific Street. At the time of the divorce, Wife owned and worked at Knaup Floral, and Husband worked for the City of Cape Girardeau. Wife testified that Knaup Floral was struggling financially but that she was still able to pay herself a salary. Wife received a gross annual salary from Knaup Floral of $69,000 ($5,850

per month) and Husband received a gross annual salary of $51,792 ($4,316 per month). Husband had worked for the City for twenty-seven years, during which he had participated in a defined benefit pension plan through the Missouri Local Government Employees Retirement Benefit Plan (LAGERS).

The trial court divided the parties' marital assets and debts as follows:

| Wife | Husband |
|---|---|
| Knaup Floral, valued at $0 | LAGERS pension, valued at $0 |
| real estate associated with Knaup Floral, valued at $410,000, less $52,000 owed ($358,000 total value) | |
| Ford Transit van titled to Knaup Floral, valued at $6,500 | |
| The marital residence located at 136 South Pacific Street, valued at $143,500 | |
| 2013 Toyota Highlander titled to Knaup Floral, valued at $27,000, less $30,248 owed ($-3,248 total value) | 2008 Toyota FJ Cruiser, valued at $21,000 |
| Her retirement account, valued at $62,611 | His retirement account, valued at $136,316 |
| Two life insurance policies, valued at $5,550 and $5,135 respectively ($10,685 total value) | Four life insurance policies, valued at $0, $0, $9,097, and $10,000, respectively ($19,097 total value) |
| Bank account in Wife's name with $300 | Bank account in Husband's name with $500 |
| Knaup Floral Bank account with $1,432 | |
| two credit card debts of $4,552 and $3,507 respectively ($-8,059 total debt) | |
| = total award of $571,721 | = total award of $176,913 |

To equalize the awards, the trial court ordered Wife to pay to Husband $196,496.50, for total approximate awards of $375,224 to Wife and $373,410 to Husband.

With respect to Husband's LAGERS pension, the trial court found it was a defined benefit plan, which would provide Husband a guaranteed benefit when he retired at the age of 60. Husband was vested in the plan, and, at the time of trial, the accrued guaranteed future benefit was $1,676 per month, of which 82% was marital property. The trial court noted that both parties had

2

requested a present-value division of the LAGERS plan, but they did not agree on its value. Wife presented expert testimony that the total current value of the LAGERS pension plan was $216,121.62, with no reduction for estimated taxes. Wife's expert used a 3.45% discount rate based on the U.S. Treasury Thirty-Year bond and assumed Husband would have a life expectancy of 81.5. Husband presented expert testimony that the current value of Husband's LAGERS pension plan was $90,260, which the expert then reduced to $70,747 to account for estimated taxes. Husband's expert used a 7.25% discount rate based on a 2012 LAGERS audit report listing its annual rate of return. Finally, noting that not all of the LAGERS pension benefits were marital property, Husband's expert calculated the marital portion of the post-tax present value of the LAGERS pension account as $53,300. Husband's expert agreed that if Husband died before he retired, there would be no pension benefit.

The trial court, however, determined the current value of the plan at the time of the trial was $0, and it ordered, instead, that Wife shall receive a portion of the pension benefits once Husband began receiving them. The court noted that LAGERS is exempt from the terms of ERISA and cannot be divided by a Qualified Domestic Relations Order (QDRO), and thus it ordered that "[Husband] shall pay to [Wife] the sum of $687.00 (half of the accrued marital benefit of $1,374.00 per month) less applicable income taxes per month beginning on the first day of the first month that [Husband] both becomes eligible to receive such benefits and does, in fact, receive such benefits from LAGERS." This appeal follows.

## Standard of Review

Following a judgment of dissolution, we will sustain the judgment of a trial court unless there is no substantial evidence to support it, it is against the weight of the evidence, or it

3

erroneously declares or applies the law. Anderson v. Anderson, 55 S.W.3d 444, 445 (Mo. App. E.D. 2001) (citing Murphy v. Carron, 536 S.W.2d 30, 32 (Mo. banc 1976)).

## Discussion

### Point I

In her first point on appeal, Wife argues the trial court erred in its division of marital property because it failed to equitably divide the marital property and debts in a manner that was definite and capable of being enforced, in that it deferred the allocation of Husband's LAGERS benefits until after Husband retired. We disagree.

Section 452.330.1 governs the distribution of property in a dissolution of marriage, and it provides that the court "shall divide the marital property and marital debt in such proportions as the court deems just after considering all relevant factors." Section 452.330.1.[1] The trial court has broad discretion in dividing marital property. Coughlin v. Coughlin, 823 S.W.2d 73, 75 (Mo. App. E.D. 1991). This Court will only interfere with the trial court's distribution of marital property if the division is so heavily and unduly weighted in favor of one party that it amounts to an abuse of discretion. Slattery v. Slattery, 185 S.W.3d 692, 697-98 (Mo. App. E.D. 2006). We presume the trial court's division of property to be correct, and the burden is on the party challenging the division on appeal to overcome that presumption. Waite v. Waite, 21 S.W.3d 48, 51 (Mo. App. E.D. 2000).

Pension benefits accumulated during the course of a marriage are marital property and, accordingly, under Section 452.330 they must be considered in the division of marital property. Kuchta v. Kuchta, 636 S.W.2d 663, 666 (Mo. banc 1982) (establishing general rules for division of pension plans, not specific to LAGERS). There are three stages in the accumulation of a

---

[1] All statutory references are to RSMo. (Cum Supp. 2016), unless otherwise noted.

4

pension: before the plan vests, after the plan vests but before it matures, and after the plan both vests and matures. Id. at 665-66. The majority of difficulties arise in dividing plans that are vested but not yet matured. To account for these difficulties, trial courts are "authorized to apply a flexible approach to accommodate the particular facts of each case." Id. at 665. The Missouri Supreme Court in Kuchta very specifically considered and refrained from establishing fixed rules for how trial courts should divide pension plans during a divorce. Id. at 666. Although the court noted that "the most desired result would be a full and final division of marital property without contingencies," the court also noted that an immediate division of the pension benefits was not always in the best interest of the parties. Thus, the court ruled that trial courts may, in their discretion, apply a "wait and see" approach where the non-employee spouse is awarded either "a delayed percentage division" of the pension benefits or a certain portion of the retirement benefits "if and when the working spouse retires and begins to receive them." Id.

In the case at bar, although both parties requested an immediate division of Husband's LAGERS account, the trial court determined instead, in its discretion, to apply the "wait and see" approach and to award Wife a specific delayed amount of Husband's benefits that he must pay directly to her when he is eligible to and does in fact receive them. This type of division was explicitly within the range of options a trial court is allowed under Kuchta.

Nevertheless, Wife urges this Court to follow instead the recent Western District case of Joyner v. Joyner, 460 S.W.3d 467 (Mo. App. W.D. 2015). In Joyner, the trial court had ordered that the wife "receive[]" a 25% share of the marital portion of the husband's LAGERS benefits, without indicating whether the payment would be through a QDRO or would issue directly from the husband to the wife. Id. at 472. The Western District reversed the trial court's decision, finding that the trial court failed "to equitably divide all of the couple's marital property and debts in a

5

manner that is definite and capable of enforcement." Id. at 476. Specifically, the Joyner court found a trial court "may not order a deferred distribution of marital property 'if and when' it is to be received to be paid in the form of future, contingent maintenance." Id. Joyner noted that because the trial court did not order a QDRO, the judgment relied on Husband to make the required payments to Wife, which it likened to future maintenance payments. Id. at 475.

To the extent Wife argues that Joyner holds that a trial court "may not order a deferred distribution of marital property," this interpretation contradicts Missouri Supreme Court caselaw. In Kuchta, the Missouri Supreme Court held that trial courts should not be required to divide pension benefits in a prescribed manner but should be granted discretion to divide pension benefits in a manner that best fits the circumstance, including a "wait and see" approach that divides benefits "if and when the working spouse retires and begins to receive them." Kuchta, 636 S.W.2d at 666. Our Supreme Court specifically noted that pension benefits that are vested but not matured—as here—"do not lend themselves to rigid and fixed rules." Id. at 665-66.

Moreover, Joyner is factually dissimilar to the case at bar. Unlike in Joyner, where Wife was ordered to "receive[]" benefits but no specific person or entity was ordered to pay her, here the trial court ordered Husband to pay a specific amount to Wife once he retires and begins receiving benefits. There is no question here that the judgment is capable of enforcement. Courts are vested with the inherent authority to enforce their judicial orders via civil contempt proceedings. See In re Marriage of Crow and Gilmore, 103 S.W.3d 778, 780 (Mo. banc 2003) (purpose of civil contempt proceedings is to coerce compliance with order or judgment previously entered). Contempt proceedings follow when the contemnor has a specific obligation under a

6

decree, but does not meet the obligation. State ex rel. Mo. Dam & Reservoir Safety Council v. Rocky Ridge Ranch Prop. Owners Ass'n, 950 S.W.2d 925, 928 (Mo. App. E.D. 1997).[2]

We note that the relevant decree must be sufficiently clear and certain to be capable of enforcement, and we find that the judgment here was sufficiently clear and specific as to be capable of enforceable via a civil contempt proceeding. See Lewis v. Murray, 738 S.W.2d 953, 956 (Mo. App. E.D. 1983) (because purpose of civil contempt is to enforce compliance with judgment or court order, both underlying judgment and contempt judgment must be sufficiently clear and certain to allow defendant to purge self of contempt). The trial court here ordered Husband to pay Wife a specific amount when he begins receiving his pension benefits—a date that, while currently unknown, will be readily identifiable when it occurs.

Further, unlike in Joyner, the trial court's order here cannot be interpreted as an order for deferred maintenance. Joyner relied on Smith v. LAGERS, in which the parties agreed the husband would make monthly payments of non-modifiable maintenance to the wife and the wife would relinquish any marital interest in the husband's LAGERS pension benefits. Smith v. Mo. Local Gov't Employees Ret. Sys., 253 S.W.3d 578, 580 (Mo. App. W.D. 2007). When he did not pay the wife maintenance, she attempted to garnish the ordered maintenance from his LAGERS account. Id. The Smith court held that Section 70.695's anti-execution clause, holding that LAGERS benefits shall be free from "execution, garnishment, attachment, the operation of bankruptcy or insolvency laws,"[3] trumped Section 452.140's provision that no property shall be

---

[2] By contrast, we note that in Joyner, the order would not have been enforceable in a contempt proceeding, because no one—neither the husband nor the LAGERS administrators—was ordered to make payments to the wife, and only a person who is ordered in a decree to perform an obligation can be held in contempt for failing to do so. See State ex rel. Mo. Dam & Reservoir Safety Council v. Rocky Ridge Ranch Prop. Owners Ass'n, 950 S.W.2d 925, 928 (Mo. App. E.D. 1997).

[3] Section 70.695, RSMo. (Cum. Supp. 2016) provides that:

> The right of a person to an allowance, to the return of accumulated contributions,
> the allowance itself, any allowance option, and any other right accrued or accruing

7

exempt from execution for maintenance. Id. at 582. Nevertheless, the holding in Smith does not determine our opinion here. The trial court here specifically denied Wife maintenance and, separately, granted her 50% of the marital portion of Husband's LAGERS pension benefits "if and when" he begins to receive them. Because the trial court did not order maintenance, the issue of whether maintenance can be garnished from LAGERS is irrelevant.

Rather, LAGERS benefits accumulated during the marriage are marital property belonging to both parties, for which execution, garnishment, or attachment is not at issue. Looking at the plain language of the statute, the purpose of the anti-execution clause is to protect a state employee's LAGERS pension benefits from creditors. See Section 70.695; see also Finnegan v. Old Republic Title Co. of St. Louis, Inc., 246 S.W.3d 928, 930 (Mo. banc 2008) ("[i]n determining legislative intent, this Court considers the language of the statute and the words employed in their plain and ordinary meaning"). LAGERS benefits accumulated during a marriage are marital property, and because the trial court here awarded Wife a set amount of the marital LAGERS benefits, Wife here is not an external creditor. [4]

> under the provisions of [the LAGERS statute] and all moneys belonging to the system shall not be subject to execution, garnishment, attachment, the operation of bankruptcy or insolvency laws, or to any other process of law whatsoever, and shall be unassignable ..., except that ... [s]uch rights shall not be exempt from attachment or execution in a proceeding instituted for the support and maintenance of children.

[4] The parties agreed that LAGERS is not subject to a QDRO. Although this issue has not been raised on appeal and thus we do not rule on it, we do not necessarily agree with the parties' underlying assumption that a trial court cannot order the LAGERS pension fund to pay pension benefits directly to a nonemployee divorced spouse. It is true that LAGERS contains language prohibiting assignment, execution, attachment, and garnishment of its benefits—with the exception of collection of child support, see Section 70.695; and it is also true that LAGERS does not specifically allow enforcement via a QDRO. However, pension benefits earned during the marriage are marital property, and if the court awards part of the benefits to a non-employee ex-spouse, it does not follow that this would implicate garnishment or assignment. Nevertheless, because the LAGERS statutes do not specifically allow QDROs, a court's division of these marital benefits is uncertain. The Missouri legislature should help clarify this area of law by specifically considering whether the LAGERS pension fund should pay benefits directly to both the employee beneficiary and to the nonemployee divorced spouse.

8

Wife also argues that a delayed division of pension benefits violates the Dissolution of Marriage Act by ordering common ownership of property. The Dissolution of Marriage Act sought to eliminate "all unity of possession, as well as unity of title, between the spouses when consummating a 'just' division of 'marital property.'" In re Wax, 63 S.W.3d 668, 671 (Mo. App. E.D. 2001). However, once the pension benefits are divided by the trial court, there is no unity of possession. Here, under the trial court's order, of Husband's future $1,676 per month LAGERS benefit, $687 per month belongs to Wife,[5] while the remainder belongs to Husband. That Husband is ordered to make certain continuing payments to Wife does not create a unity of possession.

Last, we do not support an approach that requires that trial courts in all dissolution cases where the marital assets include a LAGERS benefit plan to calculate the present value of the LAGERS plan and to immediately divide that present value between the parties. A pension plan is often the largest marital asset, see Kuchta, 636 S.W.2d at 664, and requiring an immediate division of its present value would frequently place an unworkable burden on both parties. Unless the parties have substantial assets with which to offset the pension benefits, as is the case here, a present-value division would likely result in an extremely large debt to the LAGERS beneficiary. At the same time, there is no guarantee that a LAGERS beneficiary or their divorced spouse would receive any LAGERS benefits if the LAGERS beneficiary predeceases the pension's maturation. While we recognize Joyner's concerns regarding the ambiguity inherent in deferred divisions of retirement benefits and of continuing animosity between the parties, we reaffirm Kuchta's approach of allowing trial courts flexibility and discretion in determining how to divide pension benefits.

---

[5] Assuming that Husband retires at age 65 and assuming that the average male can expect to live to the age of approximately 84, see http://www.ssa.gov/planners/lifeexpectancy.html, Wife can expect a gross benefit of approximately $156,636.

We see no abuse of discretion in the trial court's division of property. See Slattery, 185 S.W.3d at 697-98. Point denied.

## Point II

In her second point on appeal, Wife argues the trial court erred in assigning a present value of zero dollars to Husband's LAGERS pension account, because its finding was not supported by substantial evidence and was against the weight of the evidence presented at trial. We disagree.

The trial court here decided, as was within its discretion, to adopt a "wait-and-see" division of the pension benefits rather than an immediate-offset division. The court divided the marital portion of the future pension equally between Husband and Wife, with Wife to receive $687 per month. Because the court chose to award a future rather than an immediate benefit, its current value was not at issue. Moreover, the trial court's valuation of $0 is correct, in that were Husband to die before the LAGERS pension plan matures, his benefits would be worth $0. The trial court met its obligation to order a full division of all marital and non-marital property and did not abuse its discretion in assigning a current value of $0 to Husband's LAGERS pension benefits.

Point denied.

## Point III

In her third and final point on appeal, Wife argues that the trial court erred in its division of marital property, because the court failed to consider the factors set forth in Section 452.330. We disagree.

Section 452.330 provides that in a dissolution proceeding the trial court "shall divide the marital property and marital debts in such proportions as the court deems just after considering all relevant factors," including (1) the economic circumstances of each spouse at the time of the division, (2) the contribution of each spouse to the acquisition of the marital property, (3) the value

10

of the nonmarital property set apart to each spouse, (4) the conduct of the parties during the marriage, and (5) custodial arrangements for the minor children. Section 452.330(1)-(5). The trial court has broad discretion in dividing marital property, and as long as the division is fair and equitable under the circumstances, it need not be equal. Valentine v. Valentine, 400 S.W.3d 14, 25 (Mo. App. E.D. 2013). As a general rule, however, "the division of marital property should be substantially equal unless one or more statutory ... factors causes such a division to be unjust." Ballard v. Ballard, 77 S.W.3d 112, 116 (Mo. App. W.D. 2011) (citation omitted).

We do not agree with Wife's allegation that the trial court failed to consider the statutory factors. The trial court made findings regarding Husband's and Wife's economic circumstances at the time of the dissolution and their contributions to the acquisition of marital property. See Section 452.330(1)-(2). The court found that Wife was self-employed making an annual salary of $69,000, and Husband earned an annual salary of $51,792. The evidence was that both parties had been and were able to continue to earn a living. The court also found that Husband and Wife had jointly purchased Knaup Floral, and it awarded solely to Wife the business (valued at $0) and all assets in the business' name, including the real estate (valued at $410,000 minus $52,000 owed), vehicles (the Ford Transit Van valued at $6,500, and the Toyota Highlander valued at $27,000 minus $30,248 owed), and bank account (valued at $1,432). Although Wife testified that the business was struggling financially, she was still able to pay herself a salary of $69,000 per year and the evidence showed the business' assets far exceeded its debts. In total, the court awarded Wife $571,721 in marital property, primarily real estate, and Husband $176,913 in marital property. To offset this disparity, the court then ordered Wife to pay $196,496.50 to Husband, making the division of marital property nearly equal. Although Wife was ordered to make a large equalization payment to Husband, she was also given the real estate with which to leverage such

11

a payment. We find no abuse of the trial court's wide discretion in its nearly equal distribution of $375,224 to Wife and $373,409 to Husband. See Valentine, 400 S.W.3d at 25; Ballard, 77 S.W.3d at 116.

Further, Wife testified to Husband's controlling behavior and Husband admitted to an episode of violence that precipitated the divorce, in which he grabbed her face and shook her. However, "misconduct by one spouse cannot be used to punish that spouse by awarding a disproportionate share of the marital property to the other spouse." Seggelke v. Seggelke, 319 S.W.3d 461, 466-67 (Mo. App. E.D. 2010). Misconduct can, though, permit a disproportionate distribution when the misconduct by a spouse "changes the balance so that the other must assume a greater share of the partnership load." Nelson v Nelson, 25 S.W.3d 511, 519 (Mo. App. W.D. 2000). Nevertheless, even considering the evidence of misconduct, the trial court may in its discretion divide the marital property equally. Seggelke, 319 S.W.3d at 467. We do not find here that the trial court abused its discretion in failing to grant Wife a disproportionate division of marital property based on Husband's misconduct. See Slattery, 185 S.W.3d at 697-98.

Any further discussion of the trial court's division of property would not be profitable. See Weant v. Weant, 622 S.W.2d 789, 790 (Mo. App. W.D. 1981) (*per curiam*) (trial court's decision regarding distribution of marital property is "so clearly within the trial court's discretion that no extensive discussion would be profitable"). Point denied.

### Conclusion

The judgment of the trial court is affirmed.

_____
Gary M. Gaertner, Jr., Judge

Roy L. Richter, P.J., concurs.
Lisa P. Page, J., concurs.

12