In the Interest of Breanná Lynn SUT-
TON, Individually and by her Next
Friend, Ralph Raymond Sutton, and
Ralph Raymond Sutton, Individually,
Petitioner–Respondent,

v.

Erin Nicole McCOLLUM, Respondent–
Appellant.

No. SD 32021.

Missouri Court of Appeals,
Southern District,
Division Two.

Aug. 21, 2013.

Opinion on Denial of Rehearing and/or
Transfer to Supreme Court Sept.
16, 2013.

Application for Transfer Denied
Nov. 26, 2013.

Mark Charles Prugh, Waynesville, MO, for Appellant.

Sara Catherine Michael, Jefferson City, MO, for Respondent.

MARY W. SHEFFIELD, Judge.

Erin Nicole McCollum ("Mother") appeals the trial court's judgment in a paternity action awarding sole legal custody and sole physical custody of the parties' minor child ("Child") to Ralph Raymond Sutton ("Father"). Her five points on appeal are without merit, and we affirm the trial court's judgment.

### Standard of Review

In a court-tried case, we "must affirm the trial court's judgment unless it is not supported by substantial evidence, it is against the weight of the evidence, or it erroneously declares or applies the law." *Noland–Vance v. Vance*, 321 S.W.3d 398, 402 (Mo.App. S.D.2010). "In assessing the sufficiency of the evidence, we examine the evidence and the reasonable inferences derived therefrom in the light most favorable to the judgment." *Id.* "On appeal, we defer to the trial court's credibility determination." *Id.* "On the other hand, '[w]eight of the evidence refers to weight in probative value, not quantity or the amount of evidence.'" *Houston v. Crider*, 317 S.W.3d 178, 186 (Mo.App. S.D.2010). "An appellate court exercises extreme caution in considering whether a judgment should be set aside on the ground that it is against the weight of the evidence and will do so only upon a firm belief that the judgment was wrong." *Noland–Vance*, 321 S.W.3d at 402–03 (quoting *Simpson v.*

*Strong,* 234 S.W.3d 567, 578 (Mo.App. S.D. 2007)).

■ Furthermore, "a trial court is vested with considerable discretion in determining custody questions[.]" *Noland–Vance,* 321 S.W.3d at 403. "Only where the trial court's ruling is clearly against the logic of the circumstances or is arbitrary or unreasonable will an abuse of discretion be found." *Hoffman v. Hoffman,* 870 S.W.2d 480, 483 (Mo.App. E.D. 1994).

### Factual and Procedural Background

Mother and Father are both in the U.S. Army. The two began dating while both were assigned to Fort Bragg, North Carolina, during the summer of 2007. Mother discovered she was pregnant in April 2008. Father ended the relationship shortly thereafter.

After the breakup, Mother moved to Marceline, Missouri. Father moved to Fort Leonard Wood, Missouri, in early October 2008. Child was born in St. Louis, Missouri, in late 2008. Shortly after Child was born, Father filed a paternity action. Father and Stepmother married in August 2010. Father and Stepmother moved back to North Carolina in November 2010. Mother moved to Kansas City, Missouri.

The parties stipulated to the appointment of the guardian ad litem preceding the trial. After a four-day hearing, the trial court granted sole legal custody and sole physical custody of Child to Father. Mother appeals.

### Discussion

Mother raises five points on appeal. Specifically, she argues: (1) the trial court erred in awarding custody to Father and in ordering Stepmother would exercise Father's "custody/visitation" if Father were deployed; (2) the trial court erred in entering a custody order that separated Child from Mother's son from a previous relationship, the Child's half-brother; (3) the trial court erred in applying the Section 452.375.2 best interest factors in a paternity case; (4) the trial court misapplied the Section 452.375.2 best interest factors; and (5) the trial court erred in relying on the testimony of the guardian ad litem because the guardian ad litem was biased against Mother. For ease of analysis, we address Mother's legal arguments before addressing her factual arguments. Thus, we address Mother's points in the following order: Point I, Point III, Point V, and finally Points II and IV.

### Point I: Deployment Provision

■ In her first point, Mother claims the trial court's decision was contrary to the law because it awarded custody to a non-parent even though Mother was a fit and suitable parent. We decline to address this argument because Mother invited the error about which she complains.

The following additional facts are relevant to our disposition of this point. After the hearings were concluded, the trial court circulated a proposed judgment for comments from the parties. Mother's attorney replied, sending the trial court a list of comments and proposed changes. Included in the list was a notation that both parties were "military and subject to deployments. What happens in this situation?" The copy of the letter in the legal file had the word "granted" written next to this concern.

In the parenting plan adopted with the final judgment, the trial court ordered that Father was to have sole legal custody and sole physical custody of Child. Mother was granted parenting time on alternating holidays, spring break, and for six weeks during summer vacation. If she resided

within 250 miles of Father, Mother was also to receive alternating weekends as parenting time, and spring break was included in the alternating holiday schedule. The trial court's parenting plan also included the following provision regarding military deployment:

> In the event that either parent is deployed, the step-parent shall continue the custody/visitation of their spouse. For example, in the event Father is deployed, the minor child shall reside with her step-mother during all periods set out herein to Father. In the event that Mother is deployed, the minor child's step-father shall be entitled to exercise the custodial periods set out herein to Mother.

Mother subsequently filed a motion to reconsider or for a new trial. In that motion she did not raise any argument regarding the deployment provision.

■■■ "A party cannot complain on appeal about an alleged error in which that party joined or acquiesced at trial." *In re Marriage of Angell,* 328 S.W.3d 753, 762 (Mo.App. S.D.2010) (quoting *In re Marriage of Gardner,* 973 S.W.2d 116, 126 (Mo.App. S.D.1998)). That is, "[a] party cannot lead a trial court into error and then employ the error as a source of complaint on appeal." *Hall v. Hall,* 345 S.W.3d 291, 296 (Mo.App. S.D.2011) (quoting *First Bank Centre v. Thompson,* 906 S.W.2d 849, 859 (Mo.App. S.D.1995)). Appellate courts will not reverse a trial court on the basis of an invited error. *See, e.g., Angell,* 328 S.W.3d at 762; *Hall,* 345 S.W.3d at 296; *Torrey v. Torrey,* 333

S.W.3d 34, 39 (Mo.App. W.D.2010); *Roth v. Roth,* 760 S.W.2d 616, 618 (Mo.App. E.D.1988).

In the present case, Mother asked the trial court to include a provision in the parenting plan to specify who would care for Child in the event the parties were deployed. Then, in her motion for new trial, Mother did not complain about the provision included at her request. The trial court was never given the opportunity to make any changes or corrections to the very point Mother had requested the court include in the order. Mother invited the error about which she now complains.[1]

Mother's first point is denied.

### Point III: Using the Section 452.375.2 Best Interests Factors in a Paternity Action

In her third point, Mother argues the trial court misapplied the law when it used the best interests factors from Section 452.375.2 because this case was a paternity action and not a dissolution action. Mother's argument is without merit.

■■ "Section 452.375 governs the initial award of custody in paternity cases, as well as dissolution cases." *Day ex rel. Finnern v. Day,* 256 S.W.3d 600, 602 (Mo. App. E.D.2008). Other litigants have argued that the Section 452.375.2 best interests factors should not control the best interests determination in paternity cases because those factors are listed in the chapter governing dissolutions rather than in the chapter governing paternity actions. *See Edmison ex rel. Edmison v. Clarke,* 988 S.W.2d 604, 611 (Mo.App. W.D.1999).

1. In any event, we do not believe Mother's point is well-taken. Although perhaps inartfully worded, the provision Mother challenges addresses a common problem. In fact, the legislature has recently adopted legislation in this area, giving courts authority to create temporary custody orders to prepare for a parent's deployment and to allow delegation of a deployed parent's visitation. *See H.B.* 148, 97th Gen. Assemb. (Mo.2013). The statute also allows for an expedited hearing to address the issues raised by a pending deployment. *Id.*

Missouri courts have rejected that argument. *Id.* "[I]n fact, our courts have specifically recognized that the needs and best interests of children are the same whether or not their parents are married[.]" *Id.*

Mother's third point is denied.

### Point V: Bias of the Guardian Ad Litem

▆▆▆ In her fifth point, Mother claims the trial court erred in following the recommendation of the guardian ad litem because the guardian ad litem and the psychologist, Dr. Ann Duncan–Hively ("Dr. Duncan–Hively"), were biased. This argument is without merit.

▆▆▆ The duties of the guardian ad litem are found in Section 452.423.3. The guardian ad litem is the legal representative of the child. § 452.423.3(1). The guardian ad litem is also required to investigate "in order to ascertain the child's wishes, feelings, attachments and attitudes." § 452.423.3(2). As stated in *In re Marriage of Sisk,* 937 S.W.2d 727 (Mo. App. S.D.1996):

> [t]he role of the guardian ad litem involves more than perfunctory and shadowy duties. The guardian ad litem is supposed to collect testimony, summon witnesses and jealously guard the rights of infants, which is the standard of duty in this state. It is the guardian ad litem's duty to stand in the shoes of the child and to weigh the factors as the child would weigh them if his judgment were mature and he was not of tender years.

*Id.* at 733 (citations omitted). That is, contrary to Mother's argument, the statute does not require the guardian ad litem to be neutral. Rather the statute requires the guardian ad litem to be the child's representative. § 452.423.3(1). *See also*

*In re Adoption of F.C.,* 274 S.W.3d 478, 486 (Mo.App.S.D.2008) (applying Section 453.025.4(1)).

As the guardian ad litem was not required to be neutral, the trial judge was entitled to weigh her testimony, including her potential bias and any deficiencies in her source material, the same as the trial judge weighed the testimony of other witnesses. It is the trial court's prerogative to assess the credibility of witnesses and resolve conflicts in the evidence, and we defer to that assessment. *See Noland–Vance,* 321 S.W.3d at 418 n. 15.

Mother's fifth point is denied.

### Points II & IV: Best Interests Determination

▆▆▆ Mother's remaining two points challenge the trial court's application of the best interests factors. In support of her second point, Mother argues "[t]here is no evidence in the record showing that separating the children of [Mother] was in the best interests of the minor child of this action." In support of her fourth point, Mother lists the eight factors and presents the evidence favorable to her position at trial. Both of these arguments are without merit because they ignore our standard of review.

▆▆▆ "A claim that there is no substantial evidence to support the judgment or that the judgment is against the weight of the evidence necessarily involves review of the trial court's factual determinations." *Pearson v. Koster,* 367 S.W.3d 36, 43 (Mo. banc 2012). "A court will overturn a trial court's judgment under these fact-based standards of review only when the court has a firm belief that the judgment is wrong." *Id.* We do not find that to be the case.

In determining the best interests of a child, the trial court must consider the following non-exclusive factors:

(1) The wishes of the child's parents as to custody and the proposed parenting plan submitted by both parties;

(2) The needs of the child for a frequent, continuing and meaningful relationship with both parents and the ability and willingness of parents to actively perform their functions as mother and father for the needs of the child;

(3) The interaction and interrelationship of the child with parents, siblings, and any other person who may significantly affect the child's best interests;

(4) Which parent is more likely to allow the child frequent, continuing and meaningful contact with the other parent;

(5) The child's adjustment to the child's home, school, and community;

(6) The mental and physical health of all individuals involved, including any history of abuse of any individuals involved. If the court finds that a pattern of domestic violence as defined in [S]ection 455.010 has occurred, and, if the court also finds that awarding custody to the abusive parent is in the best interest of the child, then the court shall enter written findings of fact and conclusions of law. Custody and visitation rights shall be ordered in a manner that best protects the child and any other child or children for whom the parent has custodial or visitation rights, and the parent or other family or household member who is the victim of domestic violence from any further harm;

(7) The intention of either parent to relocate the principal residence of the child; and

(8) The wishes of a child as to the child's custodian.

§ 452.375.2. Furthermore, "the trial court need not give greater weight to certain factors than to others." *Dunkle v. Dunkle*, 158 S.W.3d 823, 833 (Mo.App. E.D. 2005). "In other words, there is no specific formula for how a trial court must weigh the nonexclusive list of best interest factors under [S]ection 452.375.2 when making its final custody determination." *Id.*

Here, Mother's argument under these two points entirely ignores large portions of the testimony of Father, Dr. Duncan–Hively, and the guardian ad litem. Father testified he and Mother communicated through emails only because other types of communication led to fights. Father explained Mother was not cooperative with him regarding visitation matters, and he had to go to court every time the temporary custody order lapsed so that he would be able to see Child. Mother told Father she did not want him involved in Child's life.

During the proceedings, the guardian ad litem requested psychological evaluations of the parties. Dr. Duncan–Hively performed the evaluations. Dr. Duncan–Hively testified the parties could not communicate, and believed Father was the more nurturing parent. Dr. Duncan–Hively also observed Child interacting with Mother's son from a previous relationship ("Brother") who was several years older than Child. Dr. Duncan–Hively did not observe a close bond between Child and his half-brother.

The guardian ad litem testified to observing a phone call between Mother and Father in which Mother was "really hostile and really degrading" to Father. Mother told the guardian ad litem Father did not

love Child. The guardian ad litem testified Mother was the most rigid and difficult to deal with parent she had ever worked with.

There was also a good deal of evidence that Father's relationship with Child was very positive. Dr. Duncan–Hively stated Child "appear[ed] particularly attached to [Father]." Child was warm and affectionate with Father. In contrast, Dr. Duncan–Hively did not observe Child seek out Mother for comfort and support. The guardian ad litem made similar observations. She testified "[t]here's just a difference between seeing [Child] with [Father] and [Child] with [Mother]."

There is sufficient testimony to support the trial court's findings and determinations regarding Child's best interests which is not mentioned in Mother's arguments. Consequently, her arguments are analytically useless. *See Houston,* 317 S.W.3d at 188–89. Mother's second and fourth points are denied.

### *Decision*

The trial court's judgment is affirmed.

JEFFREY W. BATES, J., and DON E. BURRELL, C.J., concur.

## OPINION ON MOTION FOR RE-HEARING AND/OR TRANSFER TO SUPREME COURT

In her motion for rehearing and/or transfer, Mother claims, among other things, that this Court disregarded Rule 78.07(b) when it held Mother invited the alleged error with respect to the deployment provision in the parenting plan. This assertion is incorrect, and we deny Mother's motion for rehearing.

The following additional facts are useful for understanding our disposition of Mother's motion. The case was tried without a jury. Nevertheless, Mother filed a motion for new trial, but did not file any motion to amend the judgment. The final paragraph of the motion for new trial stated:

> Regarding the Respondent's addition [sic] concerns related to the court, the Guardian ad Litem, and other aspects of the case the Respondent attaches her affidavit addressing those concerns a [sic] Exhibit C.

The motion for new trial itself did not mention any complaint with respect to the inclusion of the deployment provision in the parenting plan. Over 60 pages of evidentiary documents were attached to the motion for new trial. Mother's Exhibit C was among these evidentiary documents.

Mother's Exhibit C was not a model of clarity. In the affidavit, Mother quoted rules and portions of the judgment. Below each quotation, Mother listed copious facts. These quotations and facts primarily related to the alleged bias of the trial judge and the guardian ad litem. Finally, Mother quoted the deployment provision from the parenting plan. Beneath that quotation Mother stated:

> The following applies:
>
> 1) No Missouri Law/Statute exists that gives a step-parent custodial rights over the biological parent when the biological parent is willing/able to assume custody of the child during this time and the biological parent has not been proven unfit under Missouri Law/Statute.
>
> 2) To give the step-parent custodial rights over the biological parent is a violation of the respondent's rights as a mother. Given that the petitioner's spouse has a history of filing for divorce while her spouse is deployed, giving her custody of a child she has no biological connection to is unjust to the child.

3) As the respondent is non-deployable as stated in court the child should reside with the respondent in the event the petitioner is deployed.

4) Petitioner's parents were entered into this court case a[s] movants in the event the petitioner was not available for military duty.

5) In the event of a deployment visitations should be given the appropriate grandparents (i.e. if the petitioner is deployed, the paternal grandparent should have visitation. If the respondent is deployed, the maternal grandparents should have visitation.)

In support of her argument that this Court overlooked Rule 78.07(b) in reaching the result in this case, Mother suggests (1) no motion for new trial was necessary because this case was tried without a jury and (2) she did raise the issue in her motion for new trial by incorporation of Exhibit C. These arguments are without merit. Mother ignores the difference between the issue of whether a claim is preserved for appeal and the issue of whether a party invited error. Furthermore, Mother's evidentiary affidavit, Exhibit C, was not sufficient to give notice of the issue to the trial court.

█ As Mother correctly relates, Rule 78.07(b) provides that "in cases tried without a jury ... neither a motion for new trial nor a motion to amend the judgment or opinion is necessary to preserve any matter for appellate review." However, our opinion did not find Mother's error to be unpreserved. Rather, we found Mother invited the error of which she complained. In such circumstances, because of our concern that the trial court be allowed the opportunity to correct its own errors, "the appellant must make some effort to bring the alleged error to the trial court's attention." *Heck v. Heck,* 318 S.W.3d 760, 767 (Mo.App. W.D.2010) (quoting *McMahan v.*

*Missouri Dep't of Soc. Servs. Div. of Child Support Enf.,* 980 S.W.2d 120, 126 (Mo. App. E.D.1998)). That is, even in a court-tried case, an alleged error must be brought to the trial court's attention in some manner, especially where the party raising the error as grounds for reversal "specifically requested the trial court to order that about which the party now complains." *Id.* at 768.

█ One way to bring such an error to the trial court's attention would be by motion for new trial. And, as Mother points out, she did file a motion for new trial. Nevertheless, the motion for new trial did not sufficiently present the issue about which Mother now complains.

█ Motions for new trial are governed by Rule 78.07. In pertinent part, the rule provides that "[a]llegations of error based on matters occurring or becoming known after final submission to the court or jury shall be stated specifically." Rule 78.07(a)(3). "In order to meet the standard of Rule 78.07, the allegations in the motion must be sufficient to give the trial court an opportunity to correct its errors, without requiring the court to resort to aid extrinsic to the motion." *Brandt v. Csaki,* 937 S.W.2d 268, 275 (Mo. App. W.D.1996). *See also Cross v. Drury Inns, Inc.,* 32 S.W.3d 632, 636 (Mo.App. E.D.2000) (holding new claims cannot be raised in suggestions in support of a motion for summary judgment). Requiring legal claims to be presented in the motion without reference to extrinsic documents preserves the courts' impartiality as "[i]t is not the function of the circuit court or appellate court to sift through a voluminous record in an attempt to determine the basis for the motion." *State ex rel. Nixon v. Hughes,* 281 S.W.3d 902, 908 (Mo.App. W.D.2009) (explaining why the rules for summary judgment motions must be

strictly enforced). *See also Smith v. City of St. Louis,* 395 S.W.3d 20, 29 (Mo. banc 2013) (noting that addressing an argument requiring the court to sift through the record to detect possibly valid arguments would require the court to assume the role of advocate).

Mother's claim involves the language of the judgment, so it necessarily arose after final submission of the case. Thus, the allegation had to be stated specifically without reference to extrinsic aids. *See* Rule 78.07(a)(3). Here, the only place Mother's claim was raised below was in her affidavit. That was not sufficient to give the trial court the opportunity to address the claim. *Brandt,* 937 S.W.2d at 275. This is especially so in light of the fact that Mother requested inclusion of a deployment provision. *See Heck,* 318 S.W.3d at 768. Mother's affidavit was not the appropriate vehicle for raising a new legal claim. As an evidentiary document, it was to provide support for the allegations contained in the motion for new trial.

This conclusion is supported by examination of the nature of an affidavit. The purpose of an affidavit is only to provide evidentiary support. For example, Black's Law Dictionary defines affidavit as "[a] voluntary declaration of *facts* written down and sworn to by the declarant before an officer authorized to administer oaths, such as a notary public." Black's Law Dictionary 62 (8th ed. 2004) (emphasis added). Additionally, Rule 78.05 provides that where an after-trial motion "is based on facts not appearing of record, affidavits may be filed[.]" That is, in the context of post-trial motions, the purpose of the affidavits is merely to provide factual support for legal claims. As such, affidavits are evidentiary documents that cannot be used to *raise* additional claims. If it were otherwise, trial judges could be required to sift through numerous documents such as medical records or contractual documents, or even legal or medical journal articles in order to ascertain a party's legal arguments. Such an effort would impermissibly render the court an advocate for the party. *See Smith,* 395 S.W.3d at 29.

In sum, while Mother was not required to file a motion for new trial to preserve her claim for appellate review, she was required to bring the matter to the trial court's attention in some manner because Mother herself had previously invited the court to make some provision regarding what would occur if one of the parties were to be deployed. Hiding the issue in an affidavit buried in 60 pages of factual exhibits without mentioning the legal issue specifically in her motion for new trial was not sufficient to alert the trial court to the issue. It would have required the trial court to become Mother's advocate by sifting through a voluminous record to ascertain Mother's claim. Mother's argument was not properly raised below.

The remaining contentions in Mother's motion for rehearing and/or transfer are conclusory or merely reargue points already addressed in our principal opinion. Mother's motion for rehearing and/or transfer is denied.