Kathryn J. LANDEWEE, Appellant,

v.

John E. LANDEWEE, Respondent.

No. SC 95918

Supreme Court of Missouri
en banc.

April 25, 2017

Laura Clubb, The Clubb Law Firm LLC, Cape Girardeau, for Kathryn J. Landewee

John P. Heisserer, Rice, Spaeth, Summers and Heisserer LC, Cape Girardeau, for John E. Landewee.

George W. Draper III, Judge

Kathryn J. Landewee (hereinafter, "Wife") appeals the trial court's judgment dissolving her marriage to John E. Landewee (hereinafter, "Husband"). Wife claims the trial court erred in: (1) failing to equitably divide the marital assets and debts in a manner that is definite and capable of enforcement; (2) assigning no present value to Husband's defined benefit pension plan through the Missouri Local Government Employees Retirement Benefit Plan (hereinafter, "LAGERS"); and (3) not considering the factors in section 452.330, RSMo 2000,[1] which resulted in an unfair, unjust, and unconscionable property division ordering Wife to pay Husband an equalization share. This Court has jurisdiction over this appeal under article V, section 10, of the Missouri Constitution, because it granted transfer after opinion by the court of appeals. The trial court's judgment is affirmed.

## Factual and Procedural Background

Wife and Husband were married in 1991. During their marriage, Wife and Husband had two children.[2] Wife and Husband acquired the property and debts of Knaup Floral, Inc. (hereinafter, "Knaup Floral"), Wife's family's business. Additionally, Knaup Floral was connected by a breezeway to their marital home. At the time of their divorce, Wife owned and worked at Knaup Floral, and Husband worked for the city of Cape Girardeau.

The trial court divided the marital debts and assets, awarding Wife: Knaup Floral, along with the real estate, vehicles, and the bank account associated with Knaup Floral; the marital home connected to Knaup Floral; her retirement account; two life insurance policies; her personal bank account; and the debt on two credit cards. The trial court awarded Husband: Husband's LAGERS pension, a vehicle, Husband's retirement account, four life insurance policies, and Husband's bank account. In order to equalize the awards, the trial court ordered Wife to pay Husband $196,496.50.

Further, the trial court found a portion of Husband's LAGERS pension was marital property. Yet, any pension benefit

---

1. All further statutory references are to RSMo 2000.

2. While the children were not emancipated at the time of the dissolution, they are not a subject in this appeal.

could not be accessed until Husband retired, and if Husband were to die prior to retirement, there would be no pension benefit payable to either Wife or Husband. The trial court noted LAGERS is exempt from the terms of ERISA and cannot be divided by a qualified domestic relations order (hereinafter, "QDRO"). Accordingly, the trial court determined the LAGERS pension had no value at the time of the dissolution, and it ordered: "[Husband] shall pay to [Wife] the sum of $687.00 (half of the accrued marital benefit of $1,374.00 per month) less applicable income taxes per month beginning on the first day of the first month that [Husband] both becomes eligible to receive such benefits and does, in fact, receive such benefits from LAGERS."

Wife appealed, challenging the trial court's distribution of marital property. Following opinion by the Missouri Court of Appeals, Eastern District, this Court granted transfer.

## Standard of Review

This Court must sustain the trial court's judgment in a dissolution case "unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law." *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976); *see also Simpson v. Simpson*, 352 S.W.3d 362, 363 (Mo. banc 2011). This Court accepts as true the evidence and reasonable inferences therefrom in the light most favorable to the trial court's judgment, and disregards all evidence and inferences to the contrary. *In re Marriage of Hillis*, 313 S.W.3d 643, 644 (Mo. banc 2010). "The burden of demonstrating error is on the party challenging the divorce decree." *Hernandez v. Hernandez*, 249 S.W.3d 885, 888 (Mo. App. W.D. 2008).

"The trial court has broad discretion in identifying, valuing, and dividing marital property." *Alabach v. Alabach*, 478 S.W.3d 511, 513 (Mo. App. E.D. 2015). This Court will interfere with the trial court's distribution of marital property only if the division is so heavily weighted in favor of one party as to amount to an abuse of discretion. *Rallo v. Rallo*, 477 S.W.3d 29, 38 (Mo. App. E.D. 2015).

## Discussion

Wife raises three allegations of error, each focused upon the trial court's division of marital property.

### Equitable Distribution Capable of Enforcement

First, Wife argues the trial court failed to equitably divide the marital assets and debts in a manner that is definite and capable of enforcement as required by section 452.330. Wife asserts the trial court's judgment is inconsistent with the legislative intent of the Dissolution of Marriage Act. Specifically, Wife contends she should be awarded an immediate division of Husband's LAGERS pension.

Section 452.330.1 governs property division, and it provides the trial court "shall set apart to each spouse such spouse's nonmarital property and shall divide the marital property and marital debts in such proportions as the court deems just after considering all relevant factors." "Retirement benefits are considered marital property and are subject to division, unless they were accumulated prior to the marriage." *Rallo*, 477 S.W.3d at 39. Reaching a fair and equitable division of pension benefits requires careful consideration by the trial court of the unique circumstances of each case and the type of pension being divided. *Kuchta v. Kuchta*, 636 S.W.2d 663, 664 (Mo. banc 1982).

In *Kuchta*, this Court recognized three general periods of time when a dissolution could occur with the corresponding status of a pension plan: (1) before a plan vests; (2) after a plan vests, but before it matures; and (3) after a plan vests and matures. *Id.* at 665. It is clear a trial court may act with a reasonable amount of certainty in dividing a pension plan either before it vested or after it vested and matured. *Id.* Division of a pension that has vested but not matured, e.g., when there is no right to receive benefits until reaching a designated retirement age, presents the most difficulty. *Id.* "Because of the untold number of 'pension plans' which appear to have their own singular and unique requirements for meeting 'vesting' and 'maturing' provisions, it is imperative that trial courts be authorized to apply a flexible approach to accommodate the particular facts of each case." *Id.*

In this case, Husband has no guarantee he will receive any LAGERS pension benefits because he could predecease the pension's maturation. Accordingly, the LAGERS pension has vested but not matured. The trial court assigned the LAGERS pension a present value of zero at the time of division because neither Husband nor Wife has any ability or right to access those funds and, therefore, receipt of any pension benefit still was contingent. However, the trial court ordered Husband to pay Wife a specific amount if and when he begins receiving his pension benefits. The trial court's future, as opposed to present, distribution of the vested, non-matured LAGERS pension contemplated the fact that Husband may never receive a distribution from his LAGERS pension. The trial court equally divided, between Wife and Husband, the risk the LAGERS pension will fail to mature.

Further, and in juxtaposition to Wife's assertion, the trial court's judg-

ment is sufficiently clear and specific as to be capable of enforcement in a civil contempt proceeding. "Dissolution decrees, as well as the property agreements incorporated therein, are enforceable like any other judicial judgment." *In re Marriage of Erickson*, 419 S.W.3d 836, 840 (Mo. App. S.D. 2013) (quoting *Booher v. Booher*, 125 S.W.3d 354, 356 (Mo. App. E.D. 2004)). "The purpose of civil contempt is to 'benefit a party for whom an order, judgment, or decree was entered' by coercing compliance with the relief granted." *Davis v. Davis*, 475 S.W.3d 177, 181 (Mo. App. W.D. 2015) (quoting *In re Marriage of Crow and Gilmore*, 103 S.W.3d 778, 780 (Mo. banc 2003)).

Wife urges this Court to reverse the trial court's judgment, implementing the same analysis as in *Joyner v. Joyner*, 460 S.W.3d 467 (Mo. App. W.D. 2015). In *Joyner*, the trial court awarded the wife a larger portion of the husband's LAGERS pension account to offset an unequal division of marital property. *Id.* at 470. Further, the trial court found the wife was to be paid her portion of the pension "when and if" the husband received any benefit. *Id.* at 472. The trial court employed this division because the LAGERS pension account was not subject to a QDRO, which would allow the designation of an alternative payee when the husband started receiving his pension benefits. *Id.* at 471–72.

The Western District reversed the trial court's judgment, stating "Even if this 'deferred distribution' is considered on the order of a division of marital property in the form of an award of future, contingent maintenance ... such a disposition is wrong ...." *Id.* at 475. The Western District found the trial court's judgment did "not satisfy the court's obligation to equitably divide all of the couple's marital property and debts in a manner that is definite and capable of enforcement." *Id.*

The Western District remanded the case "with instructions to reallocate the overall division of property after setting aside the pension to" the husband. *Id.* at 476. While the *Joyner* judgment was incapable of being enforced, *Joyner* does not mandate that every case needs to be remanded to set aside a LAGERS pension to the party who earned it and reallocate the marital property division.

Further, *Joyner* is factually distinguishable from the instant case. In *Joyner*, the wife was ordered to receive benefits, but no specific person or entity was ordered to pay her. Consequently, the order would not be enforceable in a contempt proceeding because there was no clear delineation of who the trial court ordered to pay the wife. *See Davis v. Davis*, 475 S.W.3d 177, 182 (Mo. App. W.D. 2015) ("A party establishes a *prima facie* case for civil contempt by proving: (1) that the contemnor has an obligation to pay a specific amount or perform an action as required by the court's judgment, and (2) that the contemnor failed to meet this obligation."); *State ex rel. Mo. Dam and Reservoir Safety Council v. Rocky Ridge Ranch Prop. Owners Ass'n*, 950 S.W.2d 925, 929 (Mo. App. E.D. 1997) ("Further, a decree which is ambiguous and uncertain will not support an order of contempt. It must be sufficiently definite to protect the complaining party and at the same time not be so general as to unjustly circumscribe the rights of the party enjoined.") (internal citations omitted).

Here, Husband has only a contingent right to receive his pension because his LAGERS pension has not matured. The trial court's judgment specially stated Husband would be responsible for paying Wife if and when he begins collecting his pension. Should Husband fail to comply with the trial court's judgment, Wife may file an action against Husband for civil contempt. *See D.R.P. v. M.P.P.*, 484 S.W.3d 822 (Mo. App. W.D. 2016) (finding mother in contempt for interference with a parenting plan); *Stuart v. Ford*, 292 S.W.3d 508 (Mo. App. S.D. 2009) (finding father in contempt for failure to comply with a child support order); *Vinson v. Vinson*, 191 S.W.3d 85 (Mo. App. E.D. 2006) (finding wife in contempt for denying husband access to the business and for return of the dog). The trial court employed a division of Husband's pension that this Court specifically crafted and approved.[3] The trial court's judgment is definite and capable of enforcement.

Finally, Wife believes the trial court erred in deferring allocation of the LAGERS pension because there were adequate assets that would allow an immediate offset. Wife complains she must pay Husband an equalization share to offset the volume of marital property accorded her, while she must wait until Husband retires to receive her marital portion of the LAGERS pension. Wife admits if Husband dies before his date of eligibility, she will not receive any money from the LAGERS pension but still emphasizes she believes it is unfair she must pay Husband the equalization share now. Wife's argument is unpersuasive.

Had Husband's LAGERS pension been subject to a QDRO, Wife would have no claim to an immediate payment of Husband's pension benefits. The trial court acted within its discretion in its division of Husband's LAGERS pension.

*Assignment of Value*

Second, Wife asserts the trial court erred in assigning a present value of

---

3. "Another solution would be to establish a certain portion of the retirement benefits to be paid to the non-working spouse if and when the working spouse retires and begins to receive them." *Kuchta*, 636 S.W.2d at 666.

zero dollars to Husband's LAGERS pension. Wife claims the trial court's judgment was not supported by substantial evidence and was against the weight of the evidence presented at trial.

Wife and Husband presented evidence of wildly different present value amounts of Husband's LAGERS pension at trial. There also was evidence presented that Husband's LAGERS pension had not matured and that he potentially may never receive any benefit from the pension plan. Husband would have to live for at least nine more years before becoming eligible to receive any funds from the LAGERS pension.

■ "Determining what evidence to believe is wholly within the province of the trial court." *In re Marriage of Harp*, 278 S.W.3d 681, 688 (Mo. App. S.D. 2008). Wife's assertion that the trial court was mandated to accept her evidence of the present value of Husband's LAGERS pension is incorrect. There was evidence at trial from which the trial court could conclude Husband's LAGERS pension had no present value.

Further, this Court has stated that, when a spouse receives a marital portion of retirement benefits if and when the other spouse begins to receive them, "it [is] unnecessary for the court to compute the present value of the pension rights." *Kuchta*, 636 S.W.2d at 666 (quoting *In re Marriage of Brown*, 15 Cal.3d 838, 126 Cal.Rptr. 633, 544 P.2d 561, 567 (Cal. banc 1976)). This method equally divides risk between the parties that the pension will fail to mature. *Id.*

The trial court fully divided all of Wife and Husband's marital and non-marital property, including the LAGERS pension. There was no error in assigning the non-matured LAGERS pension a present value of zero dollars because any benefit from

that pension was contingent at the time of dissolution.

### Section 452.330 Factors

■ Finally, Wife contends the trial court erred in its division of marital property because it did not consider the section 452.330 factors. Wife asserts the trial court used an oversimplified formula that resulted in an unfair, unjust, and unconscionable division ordering Wife to pay a larger equalization share to Husband.

■ Section 452.330.1 sets forth five non-exclusive factors for the trial court to consider in its division of marital property, delineating:

(1) The economic circumstances of each spouse at the time the division of property is to become effective, including the desirability of awarding the family home or the right to live therein for reasonable periods to the spouse having custody of any children;

(2) The contribution of each spouse to the acquisition of the marital property, including the contribution of a spouse as homemaker;

(3) The value of the nonmarital property set apart to each spouse;

(4) The conduct of the parties during the marriage; and

(5) Custodial arrangements for minor children.

"The trial court has broad discretion in dividing marital property, and the division need not be equal as long as it is fair and equitable under the circumstances." *Plager v. Plager*, 426 S.W.3d 689, 693 (Mo. App. E.D. 2014).

Wife focuses her argument on three factors: the economic situation of the parties at the time of the dissolution, the contribution of each party to the marital assets, and the parties' conduct during the marriage. Wife claims Knaup Floral was

valued at zero, she is able to draw only a modest salary from her employment, and those facts render her economic situation worse than Husband's. Wife also claims she should have received a portion of Husband's individual retirement account. Finally, Wife believes Husband was controlling and abusive, which should have diminished his marital share.

Wife's arguments are flawed and inaccurate. The trial court made findings regarding Wife's and Husband's economic circumstances at the time of the dissolution. Wife and Husband agreed Knaup Floral should be valued at zero, but the land upon which it was located and the attached marital home was worth more than $500,000. Wife was awarded the totality of this marital asset, in addition to the business vehicles. Yet, Wife claims she only is able to draw a modest salary from Knaup Floral. Wife's "modest" salary is $69,000 per year, which is $17,000 more per year than the salary Husband earns from his employment with the city of Cape Girardeau.

Wife believes she should have been awarded a share of Husband's individual retirement account based upon the contributions made to the acquisition of marital property. Wife's argument implies Husband's individual retirement account was set aside as nonmarital property. Yet, the trial court clearly recognized Wife and Husband's individual retirement accounts were marital property. In its division of marital property, the trial court awarded Wife the entirety of her account and Husband the entirety of his account. This

stand-alone fact does not equate with a result that the trial court failed to consider contributions made by both Wife and Husband to their marital property.[4]

Wife also believes she should have received a larger share of the marital property because Husband committed marital misconduct. Wife claims she, "the spouse with much less in retirement, a victim of domestic assault, with residential custody of the two children, a failing business, and two pieces of property that are akin to albatrosses,"[5] should not have to pay Husband the equalization share.[6]

■ A spouse's marital miscount may influence a division of marital property in some circumstances. *Dahn v. Dahn*, 346 S.W.3d 325, 335 (Mo. App. W.D. 2011). "However, marital conduct is only 'a factor in property division when the offending conduct places extra burdens on the other spouse.'" *Shafer v. Shafer*, 423 S.W.3d 911, 916 (Mo. App. S.D. 2014) (quoting *McNair v. McNair*, 987 S.W.2d 4, 6 (Mo. App. W.D. 1998)); *see also Barden v. Barden*, 463 S.W.3d 799, 805 (Mo. App. E.D. 2015); *Dahn*, 346 S.W.3d at 335.

Wife fails to acknowledge that, by her own account, Knaup Floral is not failing because she draws a $69,000 salary from it and its property is worth over a half million dollars. The trial court considered Husband's individual retirement account and his LAGERS pension as marital property and divided those benefits. Wife also fails to account for the fact Husband was

---

4. All of the marital property was accounted for and divided between Wife and Husband. Even after the trial court ordered Wife an equalization share, she still received more than 50 percent of the entire marital property.

5. The real estate associated with Knaup Floral is valued at $410,000 with a $52,000 encumbrance. The marital residence connected

to Knaup Floral is valued at $143,500. The total value less the encumbrance on the two pieces of property is $501,500. Wife was not burdened with "albatrosses."

6. Without payment of the equalization share, Wife would have been awarded more than seventy-six percent of the marital property.

ordered to provide health insurance and pay child support to her for their children.

 While there was an episode of domestic violence that precipitated this dissolution, not all marital misconduct mandates a disproportionate division of marital property. *Reed v. Reed*, 428 S.W.3d 641, 645 (Mo. App. W.D. 2013). "Even if the [trial] court believes the evidence of misconduct, it can still divide the property in equal fashion." *Seggelke v. Seggelke*, 319 S.W.3d 461, 466 (Mo. App. E.D. 2010). Wife fails to direct this Court to evidence supporting an increased burden upon her justifying her receipt of a larger share of the marital property or to any analogous case supporting her position. The trial court did not abuse its discretion in the division of marital property.

## Conclusion

The trial court's judgment is affirmed.

Breckenridge, C.J., Fischer, Stith, Wilson and Russell, JJ., concur.