

# Missouri Court of Appeals

## Southern District

### Division Two

| | | |
|---|---|---|
| In Re the Marriage of: | ) | |
| CATHERINE S. CUNNINGHAM, | ) | |
| and ROGER D. CUNNINGHAM, | ) | |
| | ) | |
| CATHERINE S. CUNNINGHAM, | ) | |
| | ) | |
| Petitioner/Respondent, | ) | |
| | ) | No. SD35580 |
| vs. | ) | Filed: April 10, 2019 |
| | ) | |
| ROGER D. CUNNINGHAM, | ) | |
| | ) | |
| Respondent/Appellant. | ) | |

### APPEAL FROM THE CIRCUIT COURT OF CRAWFORD COUNTY

Honorable Sidney T. Pearson, III, Circuit Judge

### **AFFIRMED**

Roger D. Cunningham ("Husband") appeals the trial court's judgment dissolving his marriage to Catherine S. Cunningham ("Wife"). In four points, Husband asserts the trial court erred in failing to classify and set aside his nonmarital property; that the allocation of marital property and debt was not supported by substantial evidence in that the trial court awarded Wife a disproportionate share of the value of the marital property; in finding the parties stipulated that the division of property was equal; and finding that both parties testified to the value of certain real property. Finding no merit to Husband's four points on appeal, we affirm.

**Factual and Procedural History**[1]

We view the evidence and its reasonable available inferences in the light most favorable to the judgment. *Landewee v. Landewee*, 515 S.W.3d 691, 694 (Mo. banc 2017). We recite only those facts relevant to our disposition, and as necessary for context.

The parties were married on December 21, 2002, and separated on February 11, 2016. Both parties were gainfully employed throughout the marriage, but finances were kept separate until 2013 when the parties opened a joint checking account. During the marriage, both parties contributed financially to the marital household.

Prior to the marriage, Husband owned a parcel of land with a residence located in Cuba, Missouri (the "Cuba property"). Husband purchased the property in approximately 1996 with a former wife. The Cuba property became the marital home upon the parties' marriage. Husband owed approximately $80,000 on the Cuba property at that time. Title to the Cuba property remained in Husband's name.

On November 26, 2014, the parties purchased a parcel of land, including a house, located in Hillsboro, Missouri (the "Hillsboro property") for $91,500. Wife used funds received from an inheritance to make a down payment of $20,000. The title to the property was in Husband's name only. Husband then financed the balance of approximately $71,500. Thereafter, Wife's daughter moved into the property, paying rent to Wife, who deposited those funds in a joint checking

---

[1] Minor Rule 84.04 violations, seemingly occasioned by inadvertence or a good-faith mistake, are sometimes overlooked *ex gratia* and without comment by this Court. *See Nichols v. Belleview R-III School District*, 528 S.W.3d 918, 930-31 (Mo.App. S.D. 2017) (Scott, J., concurring). Nevertheless, in this instance we are compelled to observe that Respondent's statement of facts states: "The Statement of Facts submitted by the Appellant contains numerous disputes and argumentative statements. These issues will be addressed in Wife's argument." We direct counsel to Rule 84.04(c), and clarify that the statement of facts are to include (at least) all those facts utilized in the argument section of a brief. This does not strike us as an intentional violation (and is not decisive in this instance), but this misapprehension warrants cure in any future filings with this Court.

All rule references are to Missouri Court Rules (2018).

account with Husband. After the separation, Wife instructed daughter to pay her rent directly to Husband. Daughter occupied the premises until October 2017, when she was evicted by Husband for non-payment of rent.

In January 2016, the parties agreed to refinance the Cuba property to pay off the Hillsboro mortgage. Appraisals valued the Cuba property at approximately $170,000, and the Hillsboro property at $94,000. At the time of refinancing, the debt on the Cuba property was $41,000, and the debt on the Hillsboro property was $71,000. After refinancing, the Cuba property remained in Husband's name only. At the time of trial, the debt on the Cuba property was approximately $107,000.

The parties also purchased a parcel of land in Sullivan (the "Sullivan property") for $20,000, consisting of 5 acres of undeveloped land.

The parties utilized four vehicles, Husband's nonmarital Dodge truck, a 1997 Ford Taurus, a 2003 Ford Escape, and a 2013 Kia Rio.

Other property at issue were each parties' respective checking/savings accounts, and 401K/retirement accounts held in their own name; a joint Edward Jones account in the amount of $25,000; bank accounts and/or savings accounts of Wife and Husband; a Branson timeshare; and a desk, cedar chest, chest of drawers, sewing machine, china cabinet, a glass cabinet, and a vacuum cleaner.[2]

A hearing was held on February 26, 2018, and both parties testified. Wife testified, without objection:

---

[2] Although Wife filed a "Statement of Marital and Non-Marital Property and Liabilities" and "Statement of Income and Expenses," it appears Husband did not. Since Husband also failed to testify as to the values of all nonmarital and marital property, it is difficult for this Court to determine if Husband's assertions that the trial court awarded Wife a "disproportionate share of the value of the marital property" are true.

•that the parties agreed and stipulated that each party would receive their respective bank accounts and 401K/retirement accounts held in their own names (with no stated value); and that she could have personal property consisting of a desk, cedar chest, chest of drawers, sewing machine, china cabinet, a glass case, and a vacuum, with no stated value.

Wife stated she would like the trial court to award her additional marital property consisting of:

•the Hillsboro property, with a value of $94,000, which was free and clear of any indebtedness. Wife confirmed she had used $20,000 from an inheritance as a down payment to purchase the property;

•the 2003 Ford Escape, with a value of $2,500-$3,000;

•the 2013 Kia, with Husband to pay any remaining balance owed since Husband had agreed to take a tax refund and pay the balance off, which he failed to do. Wife was aware that Husband had been driving the Kia when he was rear-ended, and that repairs were to be made from insurance proceeds; and

•savings bonds in her grandchildren's names, which were bought out of an inheritance, with no stated value.

Wife testified that Husband could have:

•his nonmarital Dodge pickup, with no stated value;

•the Cuba property (Husband had prior to the marriage) with an appraised value of $170,000, with Husband to pay the indebtedness of approximately $107,000. Wife testified she would be willing to pay Husband the sum of $20,000 toward the indebtedness, although stating that at the time of the marriage, Husband owed approximately $80,000, and at the time it was refinanced, it was paid down to approximately $41,000;

•the Sullivan property, which was purchased for $20,000, but no stated current value;

•the Branson timeshare, with no stated value;

•the 1997 Ford Taurus, with a value of approximately $2,000; and

•the jointly-titled Edward Jones account in the amount of $25,000.

Wife indicated that she contributed to the marital home during the marriage from wages, unemployment and medical leave earnings. She earned approximately $30,000 a year. Wife admitted that since the separation, she had not financially contributed to the marital debt, and that

Husband basically continued to pay everything, including (for a time) her auto and health insurance.

Wife stated that she currently lived in an apartment paying $500 per month in rent. At the time of the separation, Wife moved to California to live with her son. Three months later, Wife returned to Missouri, found employment, and rented an apartment. She was unable to live in the Hillsboro property—even though vacant—because Husband refused to give her the keys.

Husband testified, without objection, he would like the trial court to award him:

•the Cuba property (which he testified he owned prior to the marriage), and pay only $40,000 (the balance due at the time of the refinancing) toward the outstanding indebtedness of approximately $107,000. Husband gave no testimony as to the value of the Cuba property, nor disputed Wife's testimony that, pursuant to a recent appraisal (that Husband paid for), the value of the property was approximately $170,000;

•the Sullivan property, (no stated value);

•the 2003 Ford Escape, he valued at $875;

•the 1997 Ford Taurus, he valued at $100;

•the Branson timeshare, (no stated value);

•the joint Edward Jones savings account, in the amount of $25,000; and

•his bank accounts, and 401K/retirement accounts in his name.

Husband testified Wife could have:

•the desk, chest of drawers, cedar chest, sewing machine, china cabinet and vacuum, (no stated value);

•the Kia, and Wife pay the existing indebtedness of $2,000. Husband testified he was waiting on an insurance check in the amount of $1,300 so the Kia could be repaired.

Husband's income during the marriage was approximately $45,000 a year.

When the trial court questioned Husband regarding values of the Edward Jones accounts, Husband's attorney stated: "We'll stipulate that the reason we got up and said he keeps what accounts he has and she keeps what accounts she has is we believe it's a fairly good division."

The following colloquy then took place:

> [HUSBAND'S ATTORNEY]: If it please the Court, could we have a brief recess?
>
> THE COURT: We can, but my problem here, . . . just so we're all clear, is you're telling me about all this property, nobody's telling me what it's worth, nobody's telling me how much money is in the bank accounts, nobody's telling me even how many bank accounts there are, and at some point in time I'm going to have to try to divide this property evenly between these parties, and it's very difficult to do if nobody's telling me what the value of anything is.
>
> [HUSBAND'S ATTORNEY]: May I speak with counsel for a moment?
>
> THE COURT: You certainly may.
>
>      . . . .
>
> THE COURT: I understand the two of you have agreed after a brief conference . . . that all bank accounts, basically, essentially, balance?
>
> [HUSBAND'S ATTORNEY]: Yes.
>
> THE COURT: And each just get their own bank accounts. And the Edward Jones account, even though it's in both names, should be considered one of [Husband]'s accounts?
>
> [WIFE'S ATTORNEY]: Yes.
>
> [HUSBAND'S ATTORNEY]: That's correct.

At the conclusion of the evidence and testimony, the trial court requested the parties submit proposed judgments.

In Husband's proposed judgment, Husband failed to set forth any values for a substantive portion of the property, including the real property, except the joint Edward Jones account listed at approximately $25,000. Husband's proposed judgment also failed to distinguish between

6

marital and nonmarital property, and there was no reference to his nonmarital Dodge truck. It further stated that "[Wife] and [Husband] stipulated and agreed that the division of property as to value was equal."

On March 19, 2018, the trial court entered its "Findings of Fact and Conclusions of Law and Judgment and Decree of Dissolution of Marriage." The trial court awarded Wife her personal belongings; 401K and/or retirement accounts; bank accounts and/or savings bonds held with her grandchildren; all checking, savings, and CDs in her name; the Hillsboro property; the 2013 Kia, as well as the insurance proceeds associated with the Kia; the 2003 Ford Escape; and desk, cedar chest, chest of drawers, sewing machine, china cabinet; a vacuum cleaner, and glass cabinet. Wife was also ordered to make an equalization payment to Husband of $20,000, and to pay any debt in her name alone.

The trial court awarded Husband the Cuba property; all checking, savings, 401k, and retirement accounts in his name; the joint Edward Jones account with approximately $25,000; the timeshare in Branson; the Sullivan property; the 1997 Ford Taurus; and the $20,000 equalization payment from Wife.

Husband was ordered to pay the indebtedness associated with the Cuba property in the amount of $107,000, and the indebtedness against the Kia automobile in the amount of $2,800.

Husband filed a "Motion to Amend the Judgment of Decree of Dissolution of Marriage/Motion for New trial," which the trial court overruled. This appeal followed.

In four points on appeal, Husband asserts the trial court erred: (1) in failing to classify and set aside the Cuba property and the Dodge truck to Husband as his nonmarital property, pursuant to section 452.330,[3] as it was erroneous and prejudicial to the overall distribution of marital

---

[3] All references to statutes are to RSMo 2000, unless otherwise indicated.

property; (2) in its division of marital property and debts because the allocation is not supported by substantial evidence and Wife received a disproportionate share of the property, pursuant to section 452.330; (3) in its division of marital property and debts because its determination that the parties stipulated to the division is not supported by substantial evidence in that Husband never testified that the division was equal; and (4) in finding that both parties testified that the Cuba property was worth $170,000 because such finding is against the weight of the evidence, Husband never testified as to the value, and Wife's testimony as to the value was inadmissible speculation.

## Standard of Review

> This Court must affirm a decree for dissolution of marriage unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law. All evidence and reasonable inferences therefrom are viewed in the light most favorable to the trial court's judgment, and all evidence and inferences to the contrary are disregarded. The party challenging the dissolution decree bears the burden of proving error.

*Archdekin v. Archdekin*, 562 S.W.3d 298, 304 (Mo. banc 2018) (internal quotations and citations omitted). "[I]n a court tried case, a trial court is free to believe or disbelieve all, part or none of the testimony of any witness." *Id.* at 310 (internal quotation and citation omitted).

"The trial court has broad discretion in identifying, valuing, and dividing martial property. This Court will interfere with the trial court's distribution of martial property only if the division is so heavily weighted in favor of one party as to amount to an abuse of discretion." *Landewee*, 515 S.W.3d at 694 (internal quotations and citations omitted).

## Analysis

### *Point I: Cuba Property and Dodge Truck*

In his first point, Husband argues that the "trial court erred in failing to classify and set aside the Cuba house and Dodge truck to Husband as his nonmarital property, because . . .

8

§ 452.330 requires the trial court set apart to the respective parties their nonmarital property[.]"[4] In other words, Husband asserts that the trial court's findings do not reflect the orderly step-by-step procedure of section 452.330, whereby the trial court first designates and assigns nonmarital property to each party, and then divides the remainder (*i.e.*, marital property).[5]

Husband's brief does not indicate that he requested specific findings of fact—our independent review of the record (undirected by Husband)[6] does not indicate that such a request was made. This Court addressed a similar challenge of similar posture in *In re Marriage of Geske*, 421 S.W.3d 490 (Mo.App. S.D. 2013):

> As to any alleged omitted findings of fact in the judgment, Rule 73.01(c) provides that all fact issues upon which no specific findings are made shall be considered as having been found in accordance with the result reached. While a party may request that the trial court include specific findings in its judgment, pursuant to Rule 73.01(c), where he does not do so prior to the introduction of evidence, the trial court is under no obligation to specifically identify the facts it utilized in its determinations. Husband did not request that the trial court make any specific findings of fact pursuant to Rule 73.01(c), thus it was not required to make any.

*Geske*, 421 S.W.3d at 497. This basis alone would justify denial of Husband's first point.

We also observe that Husband's proposed judgment stated that Wife and Husband "testified and stipulated . . . [t]hat [Husband] is awarded the resident [sic] located in Cuba Missouri[.]" It also proposed a trial court finding "[t]hat [Husband] is awarded the residence located in Cuba, Missouri[.]" The proposed judgment does not make an explicit finding that the

---

[4] Husband makes some additional arguments concerning the trial court's treatment of his Edward Jones IRA. That subject matter is not mentioned in Husband's point relied on, and we therefore eschew it from our analysis. Rule 84.04(e).

[5] Section 452.330.1, as relevant here, states: "In a proceeding for dissolution of the marriage or legal separation, . . . the court shall set apart to each spouse such spouse's nonmarital property and shall divide the marital property and marital debts in such proportions as the court deems just after considering all relevant factors[.]"

[6] *See* Rule 84.04(e) ("For each claim of error, the argument shall . . . include a concise statement describing whether the error was preserved for appellate review; if so, how it was preserved[.]").

Cuba property was nonmarital, or even purport to engage in the two-step process of section 452.330 (the absence of which process Husband now challenges on appeal). The Dodge truck is not mentioned anywhere in Husband's proposed judgment.

Thus, Husband's argument is unavailing for the reasons expressed in ***Roth v. Roth***, 760 S.W.2d 616, 618 (Mo.App. E.D. 1988):

> Husband next argues the trial court erred in failing to set out the value of three sewing machines and in failing to determine whether the sewing machines and some insurance proceeds were marital or separate property.
>
> . . . .
>
> [T]he court's treatment of the insurance proceeds and sewing machines was not in conflict with the suggestions in husband's proposed judgment. . . . [I]nvited error would . . . apply to this complaint.

***Id.***

"A party cannot complain on appeal about an alleged error in which that party joined or acquiesced at trial." ***Sutton v. McCollum***, 421 S.W.3d 477, 481 (Mo.App. S.D. 2013) (internal quotation and citation omitted). "That is, a party cannot lead a trial court into error and then employ the error as a source of complaint on appeal. Appellate courts will not reverse a trial court on the basis of an invited error." ***Id.*** (internal quotation and citation omitted).

Furthermore, as the mandatory text of Rule 78.07(c)[7] indicates: "In all cases, allegations of error relating to the form or language of the judgment, including the failure to make statutorily required findings, must be raised in a motion to amend the judgment in order to be preserved for appellate review."

---

[7] ***Dorris v. State***, 360 S.W.3d 260, 268 (Mo. banc 2012) ("When properly adopted, the rules of court are binding on courts, litigants, and counsel, and it is the court's duty to enforce them.") (internal quotation and citation omitted).

Husband's motion to amend the judgment, as relevant to this appeal, challenged that the trial court erred: (1) in finding that [Wife] . . . wanted to keep both the Ford Escape and Kia[;] (2) in finding that [Wife] admitted on cross-examination [that Husband] was to receive ownership of the Ford Escape and Ford Taurus"; (3) "in fairly finding value of the vehicles"; and (4) in finding that "[t]he value of the vehicles was not presented by the parties due to the admissions of [Wife] and [Husband] that [Husband] was to receive ownership of the Ford Escape and Ford Taurus." The motion contains no mention of the Cuba property as relevant to Husband's current argument. The substance of Husband's motion was insufficient to alert the trial court that it should (as Husband now indicates) amend its findings such as to comport with section 452.330's step-by-step procedure. *See* Rule 78.07(c); **Geske**, 421 S.W.3d at 497.[8]

Husband fails to demonstrate that the trial court abused its discretion in its treatment of the Cuba property and the Dodge truck. Point I is denied.

### Point II: Alleged "Unequal Distribution" of Marital Property

In his second point, Husband argues that the trial court "awarded Wife a disproportionate share of the value of the marital property without any evidence justifying an unequal distribution, such as would be supported by the factors enumerated [in] . . . § 452.330."

The premise of Husband's argument is that "[a] substantial disparity in the division of marital property will only be justified if the factors enumerated in . . . § 452.330 justifies [sic] the unequal division." As applicable here, section 452.330.1 states:

> In a proceeding for dissolution of the marriage or legal separation, . . . the court shall set apart to each spouse such spouse's nonmarital property and shall divide the marital property and marital debts in such proportions as the court deems just after considering all relevant factors including:

---

[8] *Cf.* Rule 78.07(b) ("***Except as otherwise provided in Rule 78.07(c)***, in cases tried without a jury or with an advisory jury, neither a motion for a new trial nor a motion to amend the judgment or opinion is necessary to preserve any matter for appellate review if the matter was previously presented to the trial court.") (Emphasis added).

(1)  The economic circumstances of each spouse at the time the division of property is to become effective, including the desirability of awarding the family home or the right to live therein for reasonable periods to the spouse having custody of any children;

(2)  The contribution of each spouse to the acquisition of the marital property, including the contribution of a spouse as homemaker;

(3)  The value of the nonmarital property set apart to each spouse;

(4)  The conduct of the parties during the marriage; and

(5)  Custodial arrangements for minor children.

*Id.*

This Court has indicated that:

The statutory factors of section 452.330.1 are not exclusive, and the trial court has the discretion to look beyond these factors in arriving at an appropriate division. The trial court must arrive at a division that is ***fair and equitable under the circumstances*** of the case, and ***not simply divide the property equally*** between the spouses where such division does not comport with the former standard.  The trial court is permitted to attach any amount of weight it deems appropriate to the individual factors.  We begin with the presumption that a division of property is correct, and it is [appellant]'s burden as the party challenging the division to overcome that presumption.

*In re Marriage of Sivils*, 526 S.W.3d 375, 385 (Mo.App. S.D. 2017) (emphasis added) (internal

quotations and citations omitted).

[E]ven if the trial court did fail to appropriately consider one of the factors, [appellant]'s task on appeal would be to show how the trial court could not have come to the distribution that it did in light of all the credited evidence as to the section 452.330.1 factors . . . and any credited evidence as to extrinsic factors . . . the trial court could have chosen to take into account.

*Id.* at 386.

At trial, near the end of Husband's case, the trial court addressed Husband's attorney:

[M]y problem here, . . . just so we're all clear, is you're telling me about all this property, nobody's telling me what it's worth, nobody's telling me how much money is in the bank accounts, nobody's telling me even how many bank accounts there are, and at some point in time I'm going to have to try to divide this property

evenly between these parties, and it's very difficult to do if nobody's telling me what the value of anything is.

After a recess, the trial court addressed the parties and their attorneys:

> THE COURT: I understand the two of you have agreed after a brief conference . . . that all bank accounts, basically, essentially, balance?
>
> [HUSBAND'S ATTORNEY]: Yes.
>
> THE COURT: And each just get their own bank accounts. And the Edward Jones account, even though it's in both names, should be considered one of [Husband]'s accounts?
>
> [WIFE'S ATTORNEY]: Yes.
>
> [HUSBAND'S ATTORNEY]: That's correct.

While the parties may have stipulated that the value of their bank accounts "balanced" as to themselves, there is no indication of their overall values, or the manner in which those values impact the proportionality of the overall property division. Husband's proposed judgment does not purport to designate these accounts as either marital or nonmarital property, and the trial court's judgment makes no explicit findings on that issue. *See* Rule 78.07(c). Further, Husband's proposed judgment makes no purported designation as to value or classification as marital or nonmarital property regarding the unimproved Sullivan property, and several other items.

For Husband to succeed in a challenge that the overall division was so one-sided as to be inequitable as he now claims, it is incumbent upon him to demonstrate (at least) the proportional values of the items assigned, whether each item is marital or nonmarital, and the nature of the credited evidence pursuant to the section 452.330.1 factors. ***Sivils***, 526 S.W.3d at 385. While Husband's brief mentions some numbers, the absence of trial court findings on the value of several items, the lack of findings on designations of marital versus nonmarital property, and Husband's failure to preserve the issue via a motion to amend the judgment, pursuant to Rule 78.07(c), dooms

13

this challenge. Husband fails to demonstrate that the trial court abused its discretion in classifying and distributing the property at issue. Husband's Point II is denied.

### Point III: Stipulation as to Division of Property

In his third point relied on, Husband argues that the trial court erred in relying on a stipulation by both parties "that the division of property is equal[.]" Husband suggests that this stipulation is not supported by substantial evidence, "in that Husband never testified the division of property was equal[.]"

Husband's proposed judgment states: "[Wife] and [Husband] stipulated and agreed that the division of marital property as to value was equal." Assuming arguendo that Husband alleges error in his third point, it was invited error and therefore waived on appeal. *Sutton*, 421 S.W.3d at 481. Point III is denied.

### Point IV: Value of the Cuba Property

In his fourth point, Husband argues the trial court erred in finding that "both parties testified that the Cuba house is worth approximately $170,000.00 because such finding and determination is against the weight of the evidence[.]" Specifically, Husband asserts that "[t]his finding is in error because Husband never provided any testimony as to the value of the Cuba House."

Husband recognizes Wife's testimony that "[t]here was an appraisal done a few years - about two and a half, three years ago, at over $170,000.00[,]" but that she had not seen the appraisal. Husband argues that such testimony is "inadmissible and should be afforded no weight[]" because it is hearsay. Husband did not lodge a timely objection or motion to strike. The issue is not preserved for our review. We discussed this issue in *Proffer v. Fed. Mogul Corp.*, 341 S.W.3d 184, 187 (Mo.App. S.D. 2011):

Employer asks us to dismiss such testimony as 'speculative.' This misses the distinction between *admissibility* of evidence and *submissibility* of a case. Adequacy of the factual or scientific foundation for expert opinion is an *admissibility* issue which is waived absent a timely objection or motion to strike. The opinions of Drs. Park and Musich, being admitted without objection, can be considered as any other evidence in determining *submissibility* of the case. Employer cannot back-door, under the guise of an insufficiency of evidence claim, a challenge to these doctors' opinions.

*Id.* at 187. Husband fails to demonstrate reversible error. Point IV is denied.

The judgment of the trial court is affirmed.

WILLIAM W. FRANCIS, JR., P.J. - OPINION AUTHOR

JEFFREY W. BATES, J. - CONCURS

MARY W. SHEFFIELD, J. - CONCURS

15